IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

—————————————————————  )  **No. 3:06-MD-1760**
                                                  )
**IN RE: AREDIA® AND ZOMETA®**                    )
**PRODUCTS LIABILITY LITIGATION**                 )  **JUDGE CAMPBELL**
**(MDL No. 1760)**                                )
                                                  )  **MAGISTRATE JUDGE BROWN**
**This Document Relates To:**                     )
**Case Nos:** 3:06-CV-00499; 3:06-CV-00386;       )
3:06-CV-00385; 3:06-CV-00507; 3:06-CV-00522;      )
3:06-CV-00514; 3:06-CV-00518; 3:06-CV-00553;      )
3:06-CV-00509; 3:06-CV-00503; 3:06-CV-00497;      )
3:06-CV-00504; 3:06-CV-00513; 3:06-CV-00693;      )
3:06-CV-00371; 3:06-CV-00525; 3:06-CV-00390;      )
3:06-CV-00381; 3:06-CV-00502; 3:07-CV-01197;      )
3:07-CV-01225; 3:07-CV-01208; 3:07-CV-01198;      )
3:07-CV-01210; 3:07-CV-01184; 3:07-CV-01188;      )
3:07-CV-01190; 3:07-CV-01192; 3:07-CV-01193;      )
3:07-CV-01195; 3:07-CV-01201; 3:07-CV-01189;      )
3:07-CV-01211; 3:07-CV-01207                      )
—————————————————————  )

**NOVARTIS PHARMACEUTICALS CORPORATION'S OBJECTIONS TO
MAGISTRATE'S DENIAL OF *EX PARTE* CONTACTS IN ARIZONA, ARKANSAS,
ILLINOIS, INDIANA, IOWA, MINNESOTA, MISSISSIPPI, NORTH CAROLINA,
<u>PENNSYLVANIA, RHODE ISLAND, TENNESSEE, AND WASHINGTON</u>**

## <u>INTRODUCTION</u>

Pursuant to Federal Rule of Civil Procedure 72(a), Novartis Pharmaceuticals Corporation

("NPC") respectfully submits its Objections to the portion of the Magistrate Judge's January 17,

2008 Order that denied NPC permission to conduct *ex parte* interviews with the treating

physicians of plaintiffs residing in Arizona, Arkansas, Illinois, Indiana, Iowa, Minnesota,

Mississippi, North Carolina, Pennsylvania, Rhode Island, Tennessee, and Washington. *See*

1/17/2008 Order "Wave 1 *Ex Parte* Order" at 4-5 [Docket # 1094]. The Court's Order properly

allows NPC to conduct informal *ex parte* interviews with treating physicians in eighteen states –

including California and Georgia, the states where the Court had previously approved *ex parte* contacts of treaters of two then-putative class representatives in May 2007. See 5/10/2007 Order "Duncan/Lee *Ex Parte* Order" [Docket # 421]. With respect to the twelve states that are the subject of this Objection, the Magistrate Judge erroneously held that state-law restrictions on *ex parte* contacts preclude NPC from engaging in such contacts, without properly distinguishing whether those restrictions were procedural or substantive. *See* Wave 1 *Ex Parte* Order at 4 (denying contacts in states "which have prohibited them **whether substantively or procedurally**") (emphasis added). Because federal courts are not constrained to follow state procedural restrictions on *ex parte* contacts, and because the Court has otherwise favored such contacts as a useful discovery device, the Magistrate Judge's decision to prohibit such contacts in these twelve states should be overruled.

## ARGUMENT

### I.    FEDERAL PROCEDURAL LAW ALLOWS *EX PARTE* CONTACTS WHERE, AS WITH THE TWELVE STATES AT ISSUE HERE, THERE IS NO APPLICABLE PRIVILEGE OR OTHER SUBSTANTIVE PROHIBITION ON SUCH CONTACTS.

Federal, rather than state, law controls the procedural aspects of the discovery process in this Court. *See Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 296 (6th Cir. 2007) (in diversity cases, a federal court applies the substantive law of the forum state, but the procedural law of the federal courts). As discussed below, while the Court must apply state substantive law, mere procedural rules governing discovery in state court litigation need not be followed. Instead, in the absence of a substantive state-law prohibition (like privilege) on discovery, a federal court should apply federal law in deciding what restrictions should be placed on the means and methods by which a party can access non-privileged, discoverable information in federal diversity litigation.

**A.  Federal Substantive Law Does Not Preclude *Ex Parte* Contacts.**

The ability of counsel, including defense counsel, to conduct private witness interviews in federal court is "time-honored and decision-honored."  *IBM v. Edelstein*, 526 F.2d 37, 42 (2d Cir. 1975) (counsel for all parties may interview the adverse party's witnesses without the presence of opposing counsel); *see Doe v. Eli Lilly & Co.*, 99 F.R.D. 126, 128 (D.D.C. 1983) ("the Federal Rules of Civil Procedure . . . have never been thought to preclude the use of such venerable, if informal, discovery techniques as the *ex parte* interview of a witness who is willing to speak").

The Sixth Circuit has recognized that *ex parte* contacts with treating physicians are permissible discovery tools.  *See Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992) (allowing *ex parte* contacts under federal procedural rules).  In addition, this Court has authorized *ex parte* interviews when applicable state law waived confidentiality between a patient and physician.  *See* Duncan/Lee Order; *see also Travis v. Thane Int'l, Inc.*, No. 3:02-CV-1030, 2005 WL 1971900, at *2 (M.D. Tenn. Aug. 15, 2005) (admitting evidence obtained from *ex parte* interview) (Ex. A).  Other courts in the Sixth Circuit also have allowed *ex parte* contacts.  *See Weiss v. Astellas Pharma, U.S., Inc.*, 2007 WL 2137782, at *3 (E.D. Ky. July 23, 2007) (granting contacts and stating that "treating physicians are important fact witnesses" and "absent a privilege, no party is entitled to restrict an opponent's access to a witness" (internal quotations omitted)) (Ex. B) ; *Bouchard v. Am. Home Prods. Corp.*, 213 F. Supp. 2d 802, 805 (N.D. Ohio 2002) (denying a motion to preclude *ex parte* communications in products liability case); *Schwarz v. United States*, No. 94-CV-71147-DT, 1995 WL 871136, at *2 (E.D. Mich. Jan.

3

30, 1995) (federal rules do not prohibit *ex parte* contacts with a trial witness (a certified public accountant)) (Ex. C).[1]

In allowing *ex parte* contacts for plaintiffs in some states, the Court has recognized that there is no federal physician-patient or dentist-patient privilege. *See also Hancock*, 958 F.2d at 1373 (refusing to recognize a federal common law physician-patient privilege). The Court has also acknowledged that the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936 likewise provides no impediment to *ex parte* contacts. HIPAA was enacted "to improve . . . the efficiency and effectiveness of the health care system, by encouraging the development of a health information system through the establishment of standards and requirements for the electronic transmission of certain health information." § 261, 110 Stat. at 2021. In order to ensure the confidentiality of the transmitted health information, the United States Department of Health and Human Services promulgated concomitant privacy regulations, including the "Privacy Rule." 67 Fed. Reg. 53182 (Aug. 14, 2002). The Privacy Rule expressly provides that a physician may disclose a patient's medical information once the patient executes a valid authorization as prescribed in the Rule. 45 C.F.R. §§ 164.502(a)(1)(iv), 164.508 (2007). Courts have held that once a patient-turned-plaintiff executes such an authorization, *ex parte* interviews between the plaintiff's treaters and defense counsel are permissible. *See Croskey v. BMW of N. Am.*, No. 02-73747, 2005 WL 4704767, at

---

[1] Private witness interviews protected from participation by opposing counsel have long been favored by courts to ensure that attorneys can represent their clients effectively within the adversarial process and gather information freely in preparing their cases for trial without revealing work product information. *See, e.g., Hickman v. Taylor*, 329 U.S. 495, 511 (1947) (work product of lawyers consists, *inter alia*, of witness interviews and exposing such work product to opposing counsel's scrutiny would lead to "the interests of the clients and the cause of justice . . . be[ing] poorly served"); *In re Grand Jury Subpoena Dated November 8, 1979*, 622 F.2d 933, 935-36 (6th Cir. 1980) (attorney work product privilege creates zone of privacy in which attorney can investigate and prepare case; identity of whom counsel chose to interview and memoranda of interviews protected work product); *IBM*, 526 F.2d at 42, 44 (issuing writ of mandamus to permit defendant in civil suit to conduct private witness interviews; order barring such interviews "unduly infringed upon counsels' ability to prepare their case for trial").

*4-5 (E.D. Mich. Nov. 10, 2005) (HIPAA permits *ex parte* interviews when they are conducted in compliance with HIPAA regulations based on the principle of fundamental fairness to investigate the health condition of the plaintiff without interference of and without disclosing work product to plaintiff's counsel) (Ex. D); *cf. Law v. Zuckerman*, 307 F. Supp. 2d 705 (D. Md. 2004) (informal witness interviews conducted consistent with HIPAA's disclosure requirements are permissible). HIPAA also does not prevent *ex parte* communications where a qualified protective order is in place. *See Croskey*, 2005 WL 4704767, at *4-5. Here, NPC is seeking disclosure of information pertinent only to the medical conditions plaintiffs placed at issue.

### B. The Magistrate Erred In Holding That State Restrictions On *Ex Parte* Contacts Prevent The Court From Permitting Such Contacts In The Twelve States At Issue Here.

#### 1. Where State Law Recognizes A Physician-Patient Privilege That Is Waived By Initiation Of Litigation, Federal Courts Maintain Complete Discretion Over The Means And Methods Of Discovery Of Material Formerly Protected By The Privilege.

In the context of *ex parte* communications with treating physicians in cases in which a federal court has diversity jurisdiction, state law plays a limited role. The only potentially-applicable state substantive-law questions are whether under the home-state laws of the plaintiff (1) a privilege exists between the plaintiffs and their respective treating physicians, and (2) if so, whether that privilege has been waived by the filing of a lawsuit putting the plaintiff's health in issue. Beyond those two inquiries, federal rather than state law exclusively controls the procedural aspects of the discovery process, including the propriety of *ex parte* contacts. *See Patton v. Novartis Consumer Health, Inc.*, No. 4:02-CV-0047, 2005 WL 1799509, at *2-3 (S.D. Ind. July 25, 2005) (finding that because under state law, plaintiff waived any physician-patient privilege by placing medical condition at issue, informal witness interviews were permissible under federal procedural law) (Ex. E); *Everhart v. Nat'l Passenger R.R.*, No. IP01-1221-C-H/K,

2003 WL 83569, at *1 (S.D. Ind. Jan. 9, 2003) (same) (Ex. F); *Eve v. Sandoz Pharm. Corp.*, No. IP98-1429-C-Y/S, 2002 WL 32153352, at *2 (S.D. Ind. May 16, 2002) (Ex. G) ("[W]hen the issue before the court is not *what* may be discovered, but *how* that discovery may be obtained or (in this case) how trial preparation may be conducted, that issue is a matter of federal procedural law."); *Shots v. CSX Transp., Inc.*, 887 F. Supp. 206, 207 (S.D. Ind. 1995) ("the issue of how discovery may be conducted is one of federal procedure"); *Evertson v. Dalkon Shield Claimants Trust*, No. 82-1021-MLB, 1993 WL 245972, at *1 (D. Kan. June 2, 1993) ("The method for discovering unprivileged material – whether by written interrogatories, requests for admissions, depositions, or *ex parte* interviews – is entirely a matter of procedure governed by the Federal Rules of Civil Procedure.") (Ex. H); *Felder v. Wyman*, 139 F.R.D. 85, 91 (D.S.C. 1991) (although state law governs existence and waiver of privilege, "Federal Rules of Civil Procedure govern the discovery conducted in this case" – "[n]othing in those Rules prohibits informal interviews").[2]

All twelve states at issue in this motion recognize a physician-patient privilege.  And all twelve states find the physician-patient privilege waived when litigation placing a plaintiff's health at issue is initiated:

**Arizona** – *Bain v. Superior Court*, 714 P.2d 824, 827 (Ariz. 1986) (where plaintiff "places a particular medical condition at issue by means of a claim or affirmative defense, . . . then the privilege will be deemed waived with respect to that particular medical condition.");

**Arkansas** – Ark. R. Evid. 503(d)(3)(A) ("There is no privilege under this rule as to medical records or communications relevant to an issue of the physical, mental, or emotional condition of the patient in any proceeding in which he or she relies upon the condition as an element of his or her claim or defense, or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of his or her claim or defense.");

---

[2] *See also Weiss*, 2007 WL 2137782, at *3 ("Given that plaintiff has no substantive state law privilege, the federal court must now turn to its own procedural rules in considering defendants' request for *ex parte* contacts with plaintiff's treating physicians.").

**Illinois** – 735 Ill. Comp. Stat. Ann. 5/8-802 ("No physician or surgeon shall be permitted to disclose any information he or she may have acquired in attending any patient ... [except] in all actions brought by or against the patient, his or her personal representative, a beneficiary under a policy of insurance, or the executor or administrator of his or her estate wherein the patients' physical or mental condition is an issue.");

**Indiana** – *Canfield v. Sandock*, 563 N.E.2d 526, 529 (Ind. 1990) ("[W]hen a patient who is a party to a lawsuit places his mental or physical condition in issue, he has done an act which is so incompatible with an invocation of the physician-patient privilege as to that condition that he has impliedly waived the privilege to that extent.");

**Iowa** – Iowa Code Ann. § 622.10 ("[N]or does the prohibition apply to physicians or surgeons, physician assistants, advanced registered nurse practitioners, mental health professionals ... in a civil action in which the condition of the person in whose favor the prohibition is made is an element or factor of the claim or defense of the person or of any party claiming through or under the person.");

**Minnesota** – Minn. Stat. Ann. § 35.03 ("If at any stage of an action a party voluntarily places in controversy the physical, mental, or blood condition of that party, a decedent, or a person under that party's control, such party thereby waives any privilege that party may have in that action regarding the testimony of every person who has examined or may thereafter examine that party.");

**Mississippi** – Miss. R. Evid. 503(f) ("Any party to an action or proceeding subject to these rules who by his or her pleadings places in issue any aspect of his or her physical, mental or emotional condition thereby and to that extent only waives the privilege otherwise recognized by this rule.");

**North Carolina** – *Jones v. Asheville Radiological Group*, 500 S.E.2d 740, 746 (N.C. App. 1998) ("Here, when plaintiff filed the underlying action, she directly put her medical condition at the time of the mammogram procedure at issue. Thereafter, plaintiff's conduct during the course of the underlying action clearly establishes a waiver of her physician-patient privilege.");

**Pennsylvania** – Pa. Cons. Stat. Ann. § 5929 ("No physician shall be allowed, in any civil matter, to disclose any information which he acquired in attending the patient in a professional capacity ... except in civil matters brought by such patient, for damages on account of personal injuries.");

**Rhode Island** – *Donovan v. Bowling*, 706 A.2d 937, 940 (R.I. 1998) (after commencing litigation, plaintiff "was no longer entitled to the benefits of the patient-physician privilege");

**Tennessee** – *Wright v. Wasudev*, No. 01-A-01-9404-CV00176, 1994 WL 642785, at *5 (Tenn. Ct. App. Nov. 16, 1994) ("[T]he institution of a personal injury suit which presents issues requiring the disclosure of medical information effectively waives such physician-patient privilege as the injured party might assert under Tennessee laws or public policy as to the evidence relevant to those issues.") (Ex. I);

**Washington** – Wash. Rev. Code § 5.60.060(4)(b) ("Ninety days after filing an action for personal injuries or wrongful death, the claimant shall be deemed to waive the physician-patient privilege.").

Since the substantive law in each of these twelve states recognizes a waiver of the physician-patient privilege when litigation is initiated, the Magistrate Judge should have applied federal discovery rules, which allow *ex parte* contacts. The Magistrate Judge's decision to apply state law restrictions on *ex parte* contacts constitutes clear error.

> **2. Even Within The Framework Followed By The Magistrate Judge, NPC Should Be Allowed To Conduct *Ex Parte* Interviews In Indiana, Pennsylvania, Minnesota, Iowa, North Carolina, And Tennessee.**
>
> **a. Federal courts in Indiana, Pennsylvania, and Minnesota have allowed *ex parte* contacts notwithstanding any state law restrictions on *ex parte* contacts in those states.**

The Magistrate denied NPC permission to engage in *ex parte* contacts in Indiana, Pennsylvania, and Minnesota, because of restrictions imposed on such contacts in those states. However, federal courts sitting in those states have not found the corresponding state law restrictions binding in federal court and have permitted defendants to engage in *ex parte* contacts:

**Indiana** – *Patton v. Novartis Consumer Health, Inc.*, No. 4:02-CV-0047, 2005 WL 1799509, at *2-3 (S.D. Ind. July 25, 2005) (finding that because under state law, plaintiff waived any physician-patient privilege by placing medical condition at issue, informal witness interviews were permissible under federal procedural law); *Everhart v. Nat'l Passenger R.R.*, No. IP01-1221-C-H/K, 2003 WL 83569, at *1 (S.D. Ind. Jan. 9, 2003) (same); *Eve v. Sandoz Pharms. Corp.*, No. IP 98-1429-C-Y/S, 2002 WL 32153352, at *2 (S.D. Ind. May 16, 2002) (same); *Shots v. CSX Transp., Inc.*, 887 F. Supp. 206, 207 (S.D. Ind. 1995) (same);

**Pennsylvania** – *MacDonald v. United States*, 767 F. Supp. 1295 (M.D. Pa. 1991) (rejecting notion that a public policy against *ex parte* contacts exists under Pennsylvania law);

**Minnesota** – *Filz v. Mayo Found.*, 136 F.R.D. 165, 175 (D. Minn. 1991) ("the procedures outlined in the Minnesota informal interview statute do not represent an integral part of the state physician-patient privilege scheme . . ."); *Thomsen v. Mayo Found.*, No. 4-84-1239, 1986 WL

9159 (D. Minn. Aug. 20, 1986) (once privilege has been waived under Minnesota law, federal law applies to *ex parte* contacts) (Ex. J).[3]

By failing to follow the determinations by these federal courts that the state *ex parte* restrictions were not binding on a federal court sitting in diversity jurisdiction, the Court erred in holding that state law restrictions prohibit it from allowing NPC to engage in *ex parte* contacts in Indiana, Pennsylvania, and Minnesota.

### b. Restrictions on *ex parte* contacts in Iowa, North Carolina, and Tennessee are based in procedural rather than substantive state law.

State courts in Iowa, North Carolina, and Tennessee have placed restrictions on *ex parte* contacts, but they have not based those restrictions in substantive law. *See Roosevelt Hotel Ltd. P'ship v. Sweeney*, 394 N.W.2d 353, 355-57 (Iowa 1986) (denying request for *ex parte* contacts because no provision in discovery rules provides for such a procedure and Court did not believe it proper to impose one by "inherent powers of the Court", but noting, "The physician-patient rule provided in section 622.10 is an evidentiary rule rather than a substantive right."); *Crist v. Moffatt*, 389 S.E.2d 41, 45, 47 (N.C. 1990) (whether to allow *ex parte* contacts is solely a question of what methods may be used to obtain discoverable evidence); *Alsip v. Johnson City Med. Ctr.*, 197 S.W.3d 722, 727 (Tenn. 2006) ("'[A] prohibition against . . . *ex parte* contacts regulates only how defense counsel may obtain information from a plaintiff's treating physician, *i.e.*, it affects defense counsel's methods, not the substance of what is discoverable.'" (quoting

---

[3] *But see Lillebo v. Zimmer, Inc.,* No. 03-2919, 2004 WL 2066772, at *2-*3 (D. Minn. Aug. 30, 2004) (denying *ex parte* contacts based, in part, on Minnesota state rule restricting contacts) (Ex. K); *In re Baycol Prods. Litig.*, 219 F.R.D. 468 (D. Minn. 2003) (same); *Gobuty v. Kavanagh*, 795 F. Supp. 281, 285-89 (D. Minn. 1992) (same). Notably, even if this Court finds that Minnesota *ex parte* restrictions must be recognized, *ex parte* contacts should not be barred. Instead, much like New Jersey – a state which the Magistrate has allowed NPC to engage in *ex parte* contacts – Minnesota allows contacts but enforces a notice period and requires that plaintiffs' counsel have the opportunity to attend. *See* Minn. Stat. § 595.02, subd. 5.

*Crist*, 389 S.E. 2d at 45)[4].  Because the state courts imposing *ex parte* restrictions in Iowa, North

Carolina, and Tennessee have themselves recognized that such restrictions are procedural in

nature, federal courts sitting in diversity should ignore those procedural restrictions and apply

federal law allowing *ex parte* contacts.

## II.     *EX PARTE* CONTACTS ALLOW THE MOST EFFICIENT ACCESS TO DISCOVERABLE MATERIAL AND LEVEL THE PLAYING FIELD.

As the Court first recognized at the outset of this litigation, discovery via informal *ex*

*parte* interviews would offer the most efficient means of pursuing discovery in the litigation,

especially given the number of plaintiffs and corresponding physicians NPC needs to evaluate.

See CMO at 35, ¶ XI.C [Docket #89].  Following entry of the CMO, this Court has twice

recognized the benefits of allowing *ex parte* contacts.  *See* Duncan/Lee *Ex Parte* Order; Wave 1

*Ex Parte* Order.

The parties are in the midst of fact discovery on claims of Wave 1 plaintiffs.[5]  Under the

terms of the CMO, NPC is entitled to depose the plaintiff and fifteen other individuals per

plaintiff.  CMO, ¶ XI.B.  Given the number of claims upon which discovery needs to be taken,

the parties face the daunting prospect of conducting a significant number of depositions before

the close of discovery, the majority of which involve treating physicians (primarily oncologists,

dentists, and oral surgeons).  Many of the individual plaintiffs have been treated by dozens of

treaters.  Complicating the issue is the fact that many plaintiffs frequently are evaluated and

treated by multiple physicians at a single office or treatment facility.  In other words, medical

records reveal overlapping treatment by different oncologists and/or medical specialists.

---

[4] See also *Harper v. Brinke*, No. 3:06-CV-412, 2007 U.S. Dist. LEXIS 70267 at * 5 (E.D. Tenn. Sept. 21, 2007) (citing to *Alsip* and granting an order compelling the plaintiff to "provid[e] a waiver allowing the defendants to communicate directly with the plaintiff's doctors who have provided treatment relevant to the events at issue") (Ex. L).
[5] Discovery expires on the claims of eight of the plaintiffs affected by these Objections on March 14, 2008.

*Ex parte* communications allow NPC to identify medical treaters whose testimony is essential to the plaintiffs' claims and separate them from treaters whose care was merely ancillary, thereby allowing NPC to narrow the number of physicians it must depose during fact discovery and to more carefully circumscribe those depositions NPC does take. Similarly, *ex parte* contacts after deposition permit NPC to obtain updates on the plaintiffs' condition, treatment, and the provider's opinions without noticing follow on depositions, except where absolutely necessary. Permitting *ex parte* contacts with plaintiffs' treating physicians also will reduce the number of scheduling difficulties and disputes. Finally, private interviews permit investigation and preparation of defense theories without revealing work product. *Ex parte* contacts will reduce the burdens on the defendant, the providers, the Court and even plaintiffs' counsel – thereby increasing the overall efficiency of litigating these cases. *See Eve*, 2002 WL 32153352, at *2 (permitting *ex parte* communications with treating physicians because such communications reduce costs of trial preparation).

### III.    IF THIS COURT AGREES WITH THE MAGISTRATE THAT *EX PARTE* CONTACTS SHOULD NOT BE PERMITTED IN THE TWELVE STATES AT ISSUE, THE COURT SHOULD PROHIBIT PLAINTIFFS' COUNSEL FROM HAVING PRIVATE CONTACTS WITH TREATERS IN THOSE STATES.

Constitutional due process rights require fundamental fairness – including a level playing field with respect to access to important witnesses. *See, e.g.*, *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998); *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 15 (1991); *Lassiter v. Dep't of Social Servs. of Durham County*, 452 U.S. 18, 26, 33 (1981). Fundamental fairness requires equal access by all parties to fact witnesses needed to prepare for and present their cases at dispositive proceedings, such as the class certification hearing or trial.

No party has a proprietary right to any witness or the evidence that witness has. *Patton*, 2005 WL 1799509, at *4; *King v. Ahrens*, 798 F. Supp. 1371, 1373-74 (W.D. Ark. 1992). A

party is deprived of due process when a law (or other state action) gives the opposing party favored access to evidence that results in an uneven "playing field." *Cf. United States v. White*, 454 F.2d 435, 438-39 (7th Cir. 1971) ("witnesses . . . are the property of neither the prosecution nor the defense;" defendants must have an equal right and opportunity to interview witnesses as prosecutors); *Gregory v. United States*, 369 F.2d 185, 188 (D.C. Cir. 1966) (same).

NPC will be deprived of its due process rights if the Court permits counsel for plaintiffs continued favored access to key witnesses. For example, in Washington – one of the states that is subject to these Objections – plaintiffs' counsel has conducted unilateral *ex parte* discussions with plaintiffs' treating physicians. *See* Deposition of Min-Chung Chen, MD (dated January 30, 2007) at 13-16 (discussing conversation with plaintiff's attorney in which plaintiff's attorney "walked [him] through what type of questions might be asked," whether the physician had any knowledge of ONJ, and what that knowledge consisted of, including alternative causes for development of ONJ) (Ex. M). These types of one-way, unfettered contacts with critical fact witnesses seriously undermine NPC's due process rights. *Cf. IBM*, 526 F.2d at 44 (trial is "a quest for truth," and "[t]hat quest will more often be successful *if both sides have an equal opportunity* to interview the persons who have the information from which the truth may be determined") (emphasis added) (internal citation omitted); *see also Wharton v. Calderon*, 127 F.3d 1201, 1204 (9th Cir. 1997) ("a party's right to interview witnesses is a valuable right").

Accordingly, if the Court denies NPC the right to *ex parte* contacts, NPC requests that all counsel for plaintiffs be similarly prohibited from having any further *ex parte* contacts with plaintiffs' treaters.

## CONCLUSION

For the foregoing reasons, NPC respectfully requests that this Court overrule the portion of the Magistrate's Order denying NPC permission to conduct ex parte interviews with the treating physicians of Wave 1 plaintiffs who reside in Arizona, Arkansas, Illinois, Indiana, Iowa, Minnesota, Mississippi, North Carolina, Pennsylvania, Rhode Island, Tennessee, and Washington.

Respectfully submitted,

February 4, 2008

s/ Katharine R. Latimer
Joe G. Hollingsworth
Katharine R. Latimer
Donald W. Fowler
Robert E. Johnston
SPRIGGS & HOLLINGSWORTH
1350 I Street, N.W., Ninth Floor
Washington, DC  20005
(202) 898-5800
(202) 682-1639 (fax)

*Attorneys for Defendant*
*Novartis Pharmaceuticals Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this 4th day of February 2008 served a true and correct copy of the foregoing Novartis Pharmaceuticals Corporation's Objections to Magistrate's Denial of *Ex Parte* Contacts in Arizona, Arkansas, Illinois, Indiana, Iowa, Minnesota, Mississippi, North Carolina, Pennsylvania, Rhode Island, Tennessee, And Washington on Plaintiffs' Liaison Counsel:

       C. Patrick Flynn
       Flynn & Radford
       320 Seven Springs Way
       Suite 150
       Brentwood, TN  37027

                           s/ Katharine R. Latimer
                           Katharine R. Latimer
                           SPRIGGS & HOLLINGSWORTH
                           1350 I Street, N.W., Ninth Floor
                           Washington, DC  20005
                           (202) 898-5800
                           (202) 682-1639 (fax)

                           *Attorneys for Defendant*
                           *Novartis Pharmaceuticals Corporation*

# Exhibit

# A

## Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 1971900 (M.D.Tenn.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Travis v. Thane International, Inc.
M.D.Tenn.,2005.
Only the Westlaw citation is currently available.
United States District Court,M.D. Tennessee,
Nashville Division.
Karen TRAVIS and Ken L. Travis, Plaintiffs,
v.
THANE INTERNATIONAL, INC., d/b/a/ Thane
Fitness and John Abdo, using trad names of J.A.
Fitness, Inc., and AB-DOer, LLC, Defendants.
**No. 3:02-1030.**

Aug. 15, 2005.

Mary Ann Parker, Parker & Crofford, Nashville,
TN, for Plaintiffs.
Malcolm Leonard McCune, Blackburn & McCune,
PC, Nashville, TN, for Defendants.

### MEMORANDUM

HAYNES, J.
**\*1** Plaintiffs, Karen Travis and Ken L. Travis,
Tennessee citizens, filed this action under 28 U.S.C.
§ 1332, the federal diversity statute, against the
Defendants: Thane International, Inc. d/b/a Thane
Fitness, a Delaware corporation and John Abdo,
using trade names of JA Fitness, Inc., and
AB-DOer, LLC, California citizens. Plaintiffs assert
claims that the Defendants' product, the AB-DOer is
a defective product that caused injuries to Plaintiff
Karen Travis, resulting in surgery.

Before the Court are the Defendants' motion for
summary judgment (Docket Entry Nos. 56 and 76)
and the Plaintiffs' motion to strike an expert
affidavit. (Docket Entry No. 59). Of the two
motions, the Court addresses first Plaintiffs' motion
to strike.

### A. Plaintiffs' Motion to Strike

In this motion, Plaintiff challenges the affidavit
of Dr. Melvin D. Law, her former treating physician
who in an affidavit submitted by Defendants, opines
that the AB-DOer is not a defective product and did
not cause Plaintiff Karen Travis's injuries. (Docket
Entry No. 77, Exhibit B thereto). Plaintiff, Karen
Travis's challenges Law's affidavit as based upon an
*exparte* and impermissible interview with defense
counsel that is contrary to Tennessee law.

The Defendants respond with copies of medical
authorizations signed by Karen Travis and stating in
relevant part, that she "authorize[d]" her health care
providers to disclose to the Defendant's insurer and
its representative "any and all information you may
have concerning my injury or illnesses."(Docket
Entry No. 71, McCune Affidavit, Exhibits A and C
thereto). There responses are dated June 21, 2002,
and January 29, 2003. The Defendants' insurer sent
these documents to Defendants counsel. *Id.*

On September 13, 2003, to comply with the
Health Insurance Portability and Accountability Act
of 1996. 110 Stat.1936 (1996) and its regulations
45 C.F.R. 164.501*etseq,* Karen Travis signed a "
medical records authorization "for the Defendants'
counsel's firm, dated September 13, 2003.
Defendants' counsel also submitted his September
9, 2004 letter to Plaintiffs' counsel from his
paralegal that he "would like to take an initial
statement from Ms. Travis's physicians who
specifically treated her back injury with respect to
this action." *Id.* at Exhibit D. Without the presence
of Plaintiffs' counsel, Defendants' counsel met with
Dr. Law on July 21, 2004 and based on that
interview, Law gave his affidavit.

In an affidavit, Karen Travis disputes that the
forms that she signed did not authorize defense
counsel's contact with her physician. (Docket Entry
No. 61).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2

Not Reported in F.Supp.2d, 2005 WL 1971900 (M.D.Tenn.)
**(Cite as: Not Reported in F.Supp.2d)**

In *Givens v. Mullikin,* 75 S.W.3d 383 (Tenn.2002), the Tennessee Supreme Court recognized an implied condition of confidentiality between patient and physician.

[W]e now expressly hold that an implied covenant of confidentiality can arise from the original contract of treatment for payment, and we find that the plaintiff's complaint here has adequately alleged the existence of an implied covenant of confidentiality.

**\*2** As an implied condition of that contract, this Court is of the opinion that *the doctor warrants that any confidential information gained through the relationship will not be released without the patient's permission.*

*[W]e hold that a physician breaches his or her implied onvenant of confidentiality by divulging medical information without the patient's consent through informal conversations with others.*

*[N]o exception permits disclosure of medical information in private conversations without the patient's consent.* As such, we are not inclined to find that patients or physicians typically expect that the physician's implied covenant of confidentiality contains "informal interview" exception.

75 S.W.3d at 407, 408, 409 n. 12 (emphasis added).

In *Alsip v. Johnson City Medical Center,* WL1536191, (Tenn.Ct.App. Jan. 27, 2005), the Tennessee Court of Appeals addressed *Given* and the challenge that under prior Tennessee law, the filing of a legal action for recovery for medical injuries waived any claim of confidentiality of medical information.

*Even if Tennessee law provided that the filing of a lawsuit involving medical issues constituted a waiver by the plaintiff of the covenant of confidentiality, we believe that this law would be* preempted by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the rules promulgated by the United States Department of Health and Human Services pursuant to HIPAA. Federal law clearly provides that the provisions of HIPAA and its related rules, where more stringent or, stated another way, more confidentiality-friendly, preempt the less stringent edicts of state law; while states can establish *greater* protections than those provided for under HIPAA, they cannot promulgate rules that provide for *less* stringent protections. 45 C.F.R. § 160.203 (2005). As explained in the case of *Law v. Zurkerman,* 307 F.Supp.2d 705, 711 (D.Md.2004).

If, as argued by the defendants, the filing of a suit in Tennessee involving the plaintiff's medical condition works a waiver as to the covenant of confidentiality.

Tennessee's less stringent provision would be preempted by HIPAA's more stringent provision.

*Id.* at 9, n. 11 (citing and quoting 45 C.F.R. § 160.203).[FN1]

> FN1. The portion of 45 C.F.R. § 160.203 quoted by the Tennessee Court of Appeals reads as follows:
>
> 1. A standard, requirement, or implementation specification adopted under this subchapter that is contrary to a provision of State law preempts the provision of State law. This general rule applies, except if one or more of the following conditions is met:
>
> (b)The provision of State law relates to the privacy of individually identifiable health information and is more stringent than a standard, requirement, or implementation specification adopted under subpart E of part 164 of this subchapter.

As applied here, given expressly recognizes a patient's waiver of the covenant of confidentiality.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 3

Not Reported in F.Supp.2d, 2005 WL 1971900 (M.D.Tenn.)
(Cite as: Not Reported in F.Supp.2d)

Karen Travis's first two authorizations clearly waived her confidentiality covenant with any of her health care providers. There is nothing to suggest that Karen Travis's waivers were involuntary. Defendants' counsel gave Plaintiffs' counsel prior written notice of his intent to take an initial statement from Dr. Law that provided an opportunity for Plaintiffs' counsel to insist upon their presence at the time of Dr. Law's interview. Thus, the Court concludes that the Plaintiff's motion to strike should be denied.

### B. Defendants' Motion for Summary Judgment

#### 1. Review of the Record

*3 In their first motion for summary judgment, (Docket Entry No. 56) Defendants argue that their expert proof establishes that the AB-DOer is not a defective product. Plaintiffs respond with their expert that the product is defective. In their second motion for summary judgment, Defendants argue that Plaintiffs lack the requisite proof causation of Karen Travis's that is necessary for recovery. (Docket Entry No. 76). Plaintiffs respond that the Defendants' second motion is untimely under the Case Management Order; [FN2] was filed without Court approval; is a device to discovery the testimony of Plaintiff's physician whom Defendants did not depose; and lacks merit given the Plaintiffs' expert proof that the AB-DOer is defective and that Plaintiffs' expert proof is that Karen Travis's injuries were caused or aggravated by the Defendants' product that is defectively designed.

> FN2. In the Court's view, the proper challenge on this point is a motion to strike. Given that the Court has reviewed the motion and Plaintiffs' response, the Court addresses the substantive issues in the second motion for summary judgment.

On or about August 4, 2001, Plaintiff purchased an AB-DOer, an abdominal exercise machine. (Docket Entry No. 77, Karen Travis Deposition Exhibit "A" at p. 21). Approximately a month after beginning to use the AB-DOer, Plaintiff began experiencing pain. *Id.* pp. 26 & 27.On or around October 31, 2001, Plaintiff stopped using the AB-Doer because of pain she was experiencing in her back and leg. *Id.* at p. 28.Plaintiff's pain was in her middle back and down her right leg. *Id.* at p. 46.

Plaintiff was examined by Dr. Rungee of Tennessee Orthopaedics who performed a "Doppler" ultrasound test on the Plaintiff in order to determine the cause of pain in her leg. *Id.* at pp. 47-48.Dr. Rungee's opinion was that "everything was fine." *Id.* at p. 49.Thereafter, Plaintiff was treated by Dr. Melvin Douglas Law. *Id.* at p. 62.Plaintiff stated that "[I] really liked him, and I really liked his bedside manner, and I felt comfortable with him."*Id.* at pp. 62 & 63.Dr. Law performed back surgery on the Plaintiff in December, 2001. *Id.* at p. 63, Attached hereto as Exhibit "A").

Dr. Law who is board certified in orthopaedic surgery and is licensed in Tennessee, owns and uses the AB-DOer, and is familiar with its design and operation (Docket Entry No. 77, as Exhibit "B" thereto Law Affidavit at ¶ 3). As Karen Travis's treating physician, and based his review of her complaint, Plaintiffs' expert disclosures and the AB-DOer owner's manual, Dr. Law opines: "Mrs. Travis' back condition for which I operated was not caused by any improper or abnormal stress placed upon he back by the AB-DOer."*Id.* at ¶ 8(b).

As to the manufacture and design of the AB-DOer, the proof reflects that Thane International participated in "tweaks" that were made to the AB-DOer's packaging. Tobias Deposition, pp. 26-27. In addition, Thane International was involved in approving some of the design changes, including the location or addition of bolt holes that allowed for additional adjustment of the massage roller. Tobias Deposition, pp 33-34; Moe Deposition, pp. 16-17. Thane International was involved in testing the product, whether

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 1971900 (M.D.Tenn.)
**(Cite as: Not Reported in F.Supp.2d)**

in-house or by the customers, and made decisions based on that testing. Moe Deposition, pp. 49-50, 53-54. Thane International participated in each level of production of the AB-DOer. Tobias Deposition p. 48.

**\*4** Plaintiffs' proof includes a mechanical diagnosis expert who opines that the Ab-Doer is defectively designed in its seating design for the intended purpose of the product and that the product lacks sufficient warnings. (Docket Entry No. 24 Wasilewski Affidavit at p. 3). Dr. Paul C. Buechel, a neurologist, opines that the Defendants' product caused and/or aggravated the Plaintiff Karen Travis's back condition. (Docket Entry No. 90, Exhibit No. 4 thereto, Buechel Affidavit).

## 2. CONCLUSIONS OF LAW

In a diversity action, the district court is obliged to apply the law of the forum. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under Tennessee law, in tort actions, a court must the law of the state with the most significant relationship to the events giving rise to the action. *Hataway v. McKinley,* 830 S.W.2d 53, 59 (Tenn.1992). Here, Karen Travis's injuries were sustained in Tennessee and Tennessee law applies.

Plaintiffs' claims, therefore, arise under Tennessee law, and more particularly, the Tennessee Product Liability Act of 1977 ("TPLA"), Tenn.Code Ann. §§ 29-28-101*et seq.* In *Higgs v. Gen. Motors Corp.,* 655 F.Supp. 22 (E.D.Tenn.1985), the Honorable James H. Jarvis, District Judge, summarized the threshold requirements for all claims under the TPLA:

Indeed, it makes no difference whether the complaint is couched in terms of negligence, strict liability for breach of warranty; it has generally been held in the state of Tennessee that *in order for a plaintiff to recover under any theory of product liability, the plaintiff must establish that the product was defective [or] unreasonably dangerous at the time the product left the control of the manufacturer.*

655 F.Supp. at 23 (citation omitted and emphasis added).

Under the TPLA, a "defective condition" is one that "renders [a product] unsafe for normal or anticipatable handling and consumption." Tenn.Code Ann. § 29-28-102(2). Similarly, a product is "unreasonably dangerous" if it is " dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics, or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller assuming that he knew of its dangerous condition."Tenn.Code Ann. § 29-28-102(8).

As to the Defendants' liability, any non-party who is alleged by the defendant to be the tortfeasor must be sufficiently identified so as to allow the plaintiff to file and serve process on that party. *Brown v. Wal-Mart Discount Cities,* 12 S.W.3d 785 (Tenn.2000). As stated by the Tennessee Supreme Court:

we conclude that the defendant may not attribute fault to a nonparty who is not identified sufficiently to allow the plaintiff to plead and serve process on such person pursuant to Tenn.Code Ann. § 20-1-119 (1994 & Supp.1999), even if the defendant establishes the nonparty's existence by clear and convincing evidence.

**\*5** *Id.* at 786.

If the identification is insufficient, then the defendant cannot attribute fault to the nonparty. *Id.,* See also, *Samuelson v. McMurtry,* 962 S.W.2d 473, 475 (Tenn.1998); and *Ridings v. Ralph M. Parsons Co.,* 914 S.W.2d 79, 84 (Tenn.1996); *Grandstaff v. Hawks,* 36 S.W.3d 482, 495 (Tenn.Ct.App.2000).

Defendant Thane did not sufficiently identify the non-party manufacturer in its Answer: "[t]his Defendant is not responsible ... for any fault which may [be][sic] attributable to unnamed third parties whose identities and act or omissions constituting fault may be developed through discovery."Answer of Thane International, Inc., p. 4, paragraph 37.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 5

Not Reported in F.Supp.2d, 2005 WL 1971900 (M.D.Tenn.)
**(Cite as: Not Reported in F.Supp.2d)**

Such vague references to "unnamed third parties" is insufficient to satisfy the requirements of Tennessee law. The Defendant Thane cannot attribute any fault for these injuries to a non-party.

Genuine issues of material fact exist on Defendants' liability for Plaintiff Karen Travis's injuries. Thane International placed its name on the AB-DOer manual, revised the instruction manual, and did not include the name of the manufacturer, Inventors Universe. Tobisa Deposition, pp. 21-22; Moe Deposition, pp. 9-10.

"One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer." Restatement (Second) of Torts Section 400 (1964). The Tennessee Supreme Court has adopted this principle:
"In a number of cases it has been held that one who labels a product with his won name or otherwise represents it to be his won is to be treated on the same basis as if he had manufactured it, and so is liable for any negligence on the part of the actual marker."Prosser, Law of Torts, 3rdEd., Section 96. Decora, though it did not manufacture the product, labeled it with its own name and in its advertising material represented itself as being the originator and distributor.

*Walker v. Decora*, 225 Tenn. 504, 471 S.W.2d 778 (Tenn.1971).

Here, Defendant Thane, represented that it made the AB-DOer, Thane placed its name on the product and its packing materials and instructional manual, and omitted the manufacturer's name from the manual. The testimony of Elizabeth Moe and John Tobias reflect Thane's involvement with the design and development of the product beyond a mere distributorship. Thus, material factual disputes remain as to Thane's actual participation in the design, manufacture, and testing of the AB-DOer.

To establish claim under the TPLA, a plaintiff has the burden of proving proximate cause-that the " alleged defect in the product [was] the cause in fact of the injury."*Wyatt v. Winnebago Indus., Inc.*, 566 S.W.2d 276, 280-81 (Tenn.Ct.App.1977). Although

"[t]he issue of whether a product is defective or dangerous is one for the jury,"*Whaley v. Rheem Mfg. Co.*, 900 S.W.2d 296, 300 (Tenn.Ct.App.1995) (citation omitted), under Tennessee law, "expert testimony is required to establish liability in cases alleging manufacturing and design defects."*Pride v. BIC Corp.*, 218 F.3d 566, 580 (6th Cir.2000); *see also* *Browder v. Pettigrew*, 541 S.W.2d 402, 404 (Tenn.1976); *Fulton v. Pfizer Hosp. Prod. Group, Inc.*, 872 S.W.2d 908, 912 (Tenn.Ct.App.1993). Accordingly, a court must grant summary judgment where admissible expert testimony on causation and product defect is lacking. *See,e.g.,Coffey v. Dowley Mfg. Co.*, 187 F.Supp. 958, 979 (M.D.Tenn.2002) (Nixon, J.) ("Without [their proffered expert witness], Plaintiffs cannot show a reasonable jury that this is an incident that would not occur without a defect; to do that, they would need an expert witness.").

**\*6** Given Plaintiffs' unchallenged expert proof that the AB-DOer is a defective product and and was the cause or a contributing cause to Karen Travis's back injury, the Court concludes that Plaintiffs have sufficient expert proof that Karen Travis's injuries were caused by the use of the AB-DOer. Thus, the Defendants' motions for summary judgment should be denied.

An appropriate Order is filed herewith.

ENTERED this the *11th* day of August, 2005.

M.D.Tenn.,2005.
Travis v. Thane International, Inc.
Not Reported in F.Supp.2d, 2005 WL 1971900 (M.D.Tenn.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit

# B

**Westlaw.**

Slip Copy

Page 1

Slip Copy, 2007 WL 2137782 (E.D.Ky.), Prod.Liab.Rep. (CCH) P 17,815
**(Cite as: Slip Copy)**

**H**
Weiss v. Astellas Pharma, US, Inc.
E.D.Ky.,2007.
　　　　Philip C. WEISS, et al., Plaintiffs
　　　　　　　　　　v.
　　ASTELLAS PHARMA, US, INC., et al.,
　　　　　　　Defendants.
　　　**Civil Action No. 05-527-JMH.**

　　　　　　　July 23, 2007.

David Robert Buchanan, Seeger Weiss LLP, New York, NY, H. Philip Grossman, Jennifer A. Moore, Grossman & Moore, PLLC, Louisville, KY, Larry M. Roth, Law Offices of Larry M. Roth, P.A., Orlando, FL, for Plaintiffs.
Ann Elizabeth Georgehead, Susan S. Wettle, Frost Brown Todd LLC, Louisville, KY, Harvey L. Kaplan, Mark C. Hegarty, Shook, Hardy & Bacon, Kansas City, MO, Cynthia L. Kendrick, James D. Hicks, Joe G. Hollingsworth, Katharine R. Latimer, Kirby T. Griffis, Spriggs & Hollingsworth, Washington, DC, Shea W. Conley, Reminger & Reminger Co., LPA, Samuel E. Isaacs, II, Lexington, KY, for Defendants.

**MEMORANDUM OPINION AND ORDER**

JAMES B. TODD, United States Magistrate Judge.

**I. INTRODUCTION**

　　**\*1** This is a products liability action. Plaintiffs Philip C. Weiss and Cassandra Weiss, his wife, bring this action against defendants Astellas Pharma, US, Inc. ("APUS") and Novartis Pharmaceuticals Corporation ("NPC"), alleging that as the result of using defendants' products, Elidel and Protopic,[FN1] which were prescribed for him by his dermatologist for treatment of a skin condition,

atopic dermatitis, plaintiff Philip C. Weiss ("Weiss") developed cutaneous T-cell lymphoma. Specifically, plaintiffs allege that beginning in November of 2003 through November of 2004, Weiss used and applied both Elidel and Protopic, as prescribed by his physician, and that on or about December 3, 2004, Weiss was diagnosed with cutaneous T-cell lymphoma.

　　　　FN1. Elidel is manufactured by defendant NPC; Protopic is manufactured by defendant APUS.

　　Plaintiff Philip C. Weiss asserts claims against defendants for negligence, negligent failure to warn, intentional misrepresentation, and strict liability. Plaintiff Cassandra Weiss asserts a claim against defendants for loss of consortium. Plaintiffs seek compensatory damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, and costs.

　　This matter is presently before the court on defendants' motion to compel plaintiff Philip Weiss to execute HIPAA [FN2]-compliant authorizations permitting defendants' counsel to have *ex parte* contacts with plaintiffs treating physicians, or, alternatively, to preclude plaintiffs' counsel from having *ex parte* contacts with plaintiff's treating physicians. This motion has been fully briefed and is ripe for review.[FN3]

　　　　FN2. HIPAA is an acronym for "Health Insurance Portability and Accessibility Act of 1996."

　　　　FN3. Pursuant to numerical paragraph 1 of the district court's Scheduling Order entered herein on January 24, 2007, all discovery disputes were referred to the Magistrate Judge for resolution. [DE # 146].

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 2

Slip Copy, 2007 WL 2137782 (E.D.Ky.), Prod.Liab.Rep. (CCH) P 17,815
**(Cite as: Slip Copy)**

## II. DEFENDANTS' MOTION TO COMPEL

As grounds for their motion to compel plaintiff Philip Weiss to execute HIPAA-compliant authorizations permitting defendants' counsel to have *ex parte* contacts with his treating physicians, defendants contend that the *ex parte* contacts they seek are permissible because Kentucky does not have a physician-patient privilege and allows such *ex parte* contacts. Defendants also argue that even if Kentucky recognized a physician-patient privilege, Weiss has waived the privilege by placing his medical condition at issue with the filing of this action and by authorizing the release of his medical records. Additionally, defendants submit that HIPAA permits a physician to disclose the medical information at issue herein. Furthermore, defendants argue that allowing plaintiff's counsel to have *ex parte* contacts and communication with plaintiff's treating physicians, while not also allowing defendants' counsel to have *ex parte* contacts with plaintiff's treating physicians violates defendants' due process rights. Alternatively, defendants assert that if the court does not permit their counsel to have *ex parte* contact with plaintiff's treating physicians, then in order to level the playing field, plaintiff's counsel should also be prohibited from having *ex parte* contact with plaintiff's treating physicians.

In response, plaintiffs object to the foregoing motion, in its entirety, arguing that allowing defendants' counsel to conduct *ex parte* interviews with plaintiff's treating physicians would unnecessarily risk disclosing plaintiff's protected, confidential medical information, which would also be in violation of Kentucky state law, HIPAA, and the regulations promulgated pursuant thereto. Plaintiffs argue that Kentucky's lack of a physician-patient testimonial privilege is not the issue before the court and that defendants' lengthy discussion of Kentucky's testimonial privileges ignores the real issue at hand, *viz.,* that communications between a physician and patient are confidential communications and that a patient's protected fiduciary relationship with his physician prohibits his physician from disclosing the content of those communications to third parties, and that

defendants' argument attempts to confuse these two, separate and distinct issues.

### Discussion/Analysis

**\*2** Since the court has jurisdiction over this matter by reason of diversity of citizenship, pursuant to 28 U.S.C. § 1332, resolution of the present motion first requires consideration of the extent to which Kentucky law recognizes and protects the confidentiality of the physician/patient relationship; therefore, the court must first look to Kentucky law on that issue. *Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938). The duty to ascertain state law on the matter of privileges is established by Rule 501 of the Federal Rules of Evidence, which states in relevant part that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law." Fed.R.Evid. 501.

The privileges recognized under Kentucky law are provided in Article Five of the Kentucky Rules of Evidence (KRE). The privileges listed therein include: (1) attorney-client, Rule 503; (2) husband-wife, Rule 504; (3) religious privilege, Rule 505; (4) counselor-client, Rule 506; (5) psychotherapist-patient, Rule 507; and (6) identity of informer, Rule 508. *See* Kentucky Rules of Evidence, Article V., Privileges. Thus, there is no physician-patient privilege in Kentucky, as seen in *Stidham v. Clark,* 74 S.W.3d 719, 727 (Ky.2002) (" communications made for the purpose of treatment are not privileged at all" under Kentucky law), and Kentucky courts have consistently allowed informal interviews with treating physicians. *See, e.g., Roberts v. Estep,* 845 S.W.2d 544, 547 (Ky.1993) (there is no Kentucky statute that precludes *ex parte* contact with treating physicians); *Davenport v. Ephraim Mem'l Hosp., Inc.* 769 S.W.2d 56, 62 (Ky.Ct.App.1988) (affirming the trial court's order allowing informal contacts with treating physicians).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 2137782 (E.D.Ky.), Prod.Liab.Rep. (CCH) P 17,815
**(Cite as: Slip Copy)**

"It has consistently been the expressed policy of the Kentucky Supreme Court to decline to recognize a privilege where it has not been expressed in the general laws of evidence existing in the state or in legislative enactment, except in the most compelling situations."*Williams v. Vulcan-Hart Corp.,* 136 F.R.D. 457, 460 (W.D.Ky.1991).*See also Stidham,* 74 S.W.3d at 722-23 ("testimonial privileges are generally disfavored and should be strictly construed"); *Haney v. Yates,* 40 S.W.3d 352, 355 (Ky.2000) (" privileges should be strictly construed, because they contravene the fundamental principle that the ... public has a right to every man's evidence") (internal citations omitted); *Sisters of Charity Health Sys., Inc. v. Raikes,* 984 S.W.2d 464, 469 (Ky.1998) (noting that privileges must be strictly construed because they can tilt the legal playing field). Indeed, Kentucky law states that "[e]xcept as otherwise provided by Constitution or statute or by these or other rules promulgated by the Supreme Court of Kentucky, no person has a privilege to: ... (2)[r]efuse to disclose any matter; ... or (4)[p]revent another from being a witness or disclosing any matter or producing any object or writing." Ky.Rev.Stat. Ann. Rule 501 (2006); *see also Stidham,* 74 S.W.3d at 723 (holding that Kentucky's testimonial privileges are limited to those codified in Kentucky Rule of Evidence 501, and that Rule 501"includes no provision for common law development of testimonial privileges").

*3 Although the Kentucky legislature has chosen to create privileges in the limited context of psychotherapists (see Ky.Rev.Stat. Ann. Rule 507 (2006)), school or sexual assault counselors (*see id.* at Rule 506), and certain specific diseases (*see id.* at §§ 214.625(HIV) and 214.420 (sexually transmitted disease records)), it has not promulgated similar protections with respect to physicians, consistent with decades of case law recognizing that no such privilege otherwise exists in Kentucky. *See, e.g., Louisville & N .R. Co. v. Crockett's Adm'x,* 24 S.W.2d 580, 583 (Ky.1930) (common law rule that neither physician nor patient can claim privilege of refusing to disclose alleged confidential communications between them still in force in Kentucky and has not been changed by statute); *Boyd v. Wynn,* 150 S.W.2d 648, 650 (Ky.1941);

*Williams v. Tarter,* 151 S.W.2d 783, 787-88 (Ky.1941).

Consequently, the Magistrate Judge concludes that the physician-patient privilege does not exist in Kentucky either by common law or statutory enactment. However, a decision on this present motion does not turn solely on state law issues. Resolution of this motion also requires the court to consider the scope and application of the Federal Rules of Civil Procedure, particularly those rules governing discovery.

Given that plaintiff has no substantive state law privilege, the federal court must turn to its own procedural rules in considering defendants' request for *ex parte* contacts with plaintiff's treating physicians. *See Surles ex rel. Johnson v. Greyhound Lines, Inc.,* 474 F.3d 288, 296 (6th Cir.2007) (in diversity cases, a federal court applies the substantive law of the forum state, but the procedural law of the federal courts); *see also Welch v. La. Power & Light Co.,* 466 F.2d 1344, 1345 (5th Cir.1972) ("[T]he Supreme Court has established a strong presumption that the federal rules govern, rather than state law, in cases involving arguably procedural matters."); *Patton v. Novartis Consumer Health, Inc.,* No. 4:02-CV-0047-DFH-WGH, 2005 WL 1799509, at *3 (S.D.Ind. July 25, 2005) ("the ground rules for witness interviews are essentially procedural in character and are thus governed by federal law."); *Eve v. Sandoz Pharm. Corp.,* No. IP98-1429-C-Y/S, 2002 WL 32153352, at *2 (S.D.Ind. May 16, 2002) ("[W]hen the issue before the court is not what may be discovered, but how that discovery may be obtained or (in this case) how trial preparation may be conducted, that issue is a matter of federal procedural law."); *Shots v. CSX Transp., Inc.,* 887 F.Supp. 206, 208 (S.D.Ind.1995) (holding that the FRCP "leave to the district court the discretion whether to allow ex parte conferences "); *Evertson v. Dalkon Shield Claimants Trust,* No. 82-1021-MLB, 1993 WL 245972, at *1 (D. Kan. June 2, 1993) ("The method for discovering unprivileged material-whether by written interrogatories, requests for admissions, depositions, or *ex parte* interviews-is entirely a matter of procedure governed by the Federal Rules

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                 Page 4

Slip Copy, 2007 WL 2137782 (E.D.Ky.), Prod.Liab.Rep. (CCH) P 17,815
**(Cite as: Slip Copy)**

of Civil Procedure"); *Filz v. Mayo Found.*, 136 F.R.D. 165, 170 (D.Minn.1991) (applying federal law to question whether *ex parte* interviews of treating physicians should be allowed).

**\*4** The Sixth Circuit has repeatedly held " [t]here is no federal physician-patient privilege." *Boddie v. Cranston,* 181 F.3d 99, 1999 WL 313770, at \*1 (6th Cir.1999) (unpublished table opinion); *accord United States v. Perryman,* 14 F. App'x 328, 329 (6th Cir.2001); *Hancock,* 958 F.2d at 1373. Moreover, the Federal Rules of Civil Procedure do not restrict contact with witnesses to formal mechanisms such as sworn depositions. *See, e.g., Cotton v. Hinton,* 559 F.2d 1326, 1332 (5th Cir.1977) ("informality in the discovery of information is desired"); *Williams v. Rene,* 72 F.3d 1096, 1103 (3d Cir.1995) (rejecting efforts to restrict *ex parte* interviews with treating physicians, noting the benefits of informal gathering of evidence in lieu of "the more expensive and time-consuming procedure of a formal deposition"); *Patton,* 2005 WL 1799509, at \*4 (noting that the Federal Rules "have never been thought to preclude the use of such venerable, if informal, discovery techniques as the *ex parte* interview of a witness who is willing to speak"); *Stewart v. Women in Cmty. Serv., Inc.,* No. CV-N-97-234-DWH (PHA), 1998 WL 777997, at \*4 (D.Nev. Oct. 7, 1998) (quoting *Felder v. Wyman,* 139 F.R.D. 85, 91 (D.S.C.1991)) ("Private interviews by attorneys have been recognized as a 'time-honored' method for conducting discovery.").

Numerous federal courts have held that a defendant is entitled to conduct *ex parte* interviews with a plaintiff's treating physicians. *See, e.g., Hancock,* 958 F.2d at 1373 ("Because the federal courts do not recognize a federal physician-patient privilege, appellant's arguments regarding the scope of that privilege must be rejected and the district court's decision [allowing *ex parte* contacts] affirmed"); *Williams,* 72 F.3d at 1103-04 (rejecting argument that defense was required, consistent with local law, to provide notice to plaintiff in advance of *ex parte* contacts with treating physician and holding that "counsel for all parties have a right to interview an adverse party's witnesses (the witness willing) in private, without the presence or consent

of opposing counsel and without a transcript being made") (internal quotation omitted); *Croskey v. BMW of N. Am.,* No. 02-73747, 2005 WL 4704767, at \* 4 (E.D.Mich. Nov. 10, 2005) ("To allow Plaintiff to block the interview [with plaintiffs treating physician] would ... impede Defendant's access to evidence."); *Shots,* 887 F.Supp. at 208 (" Where the plaintiff does not suggest that any other medical condition exists which merits protection from disclosure, the policy considerations which protect the physician-patient relationship can safely be subverted to those policy considerations which expedite the discovery process."); *Everhart v. Nat'l Passenger R.R.,* No. 1P01-1221-C-H/K, 2003 WL 83569, at \*2 (S.D.Ind. Jan. 9, 2003) ("the Court must balance the risks of disclosure of this information with that of the Defendant's right to mount its defenses for trial and to have equal access to pertinent witnesses"); *Felder,* 139 F.R.D. at 91 ( *ex parte* conferences between defense counsel and physician permissible in part because "nothing explicit or implicit in" the Federal Rules of Civil Procedure precludes such discovery); *Bryant v. Hilst,* 136 F.R.D. 487, 492 (D.Kan.1991) (holding that because treating physicians are fact witnesses with non-duplicable information concerning major areas of the action, both parties should have unfettered access); *Thomsen v. Mayo Found.,* No. 4-84-1239, 1986 WL 9159, at \*2 (D.Minn. Aug. 20, 1986) (holding that a physician should not "be treated in any manner differently than other non-party witnesses"); *accord Patton,* 2005 WL 1799509, at \*5;*Watson v. Olathe Med. Ctr., Inc.,* No. 01-2382-CM, 2002 WL 73395 (D.Kan. Jan. 8, 2002); *Eve,* 2002 WL 32153352, at \*2;*Stewart,* 1998 WL 777997;*Sipes v. United States,* 111 F.R.D. 59 (S.D.Cal.1986); *Doe v. Eli Lilly Co.,* 99 F.R.D. 126-28 (D.D.C .1983).

**\*5** As these courts have recognized, treating physicians are important fact witnesses, and " [a]bsent a privilege, no party is entitled to restrict an opponent's access to a witness, however partial or important to him...."*Id.* at 128;*see also Williams,* 72 F.3d at 1103 ("all parties have a right to interview an adverse party's witnesses"); *Thomsen,* 1986 WL 9159, at \*2 ("[I]n the absence of a privilege, each citizen is available within the normal bounds as a witness."); *Sipes,* 111 F.R.D. at 61 ("[Treating]

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                      Page 5

Slip Copy, 2007 WL 2137782 (E.D.Ky.), Prod.Liab.Rep. (CCH) P 17,815
**(Cite as: Slip Copy)**

physicians are percipient fact witnesses, and as such, the information and opinions they possess should be freely accessible to both parties ... as would be the case with any other ordinary fact witness.").

For all of the foregoing reasons, the Magistrate Judge concludes that defendants' counsel should be permitted to have *ex parte* contact with plaintiff's treating physicians and to conduct *ex parte* interviews with these treating physicians, *but only if these treating physicians are willing to be interviewed by defendants' counsel.*Private interviews permit investigation and preparation of possible defense theories without revealing potential work product. The presence of plaintiff's counsel during these witness interviews could cause "interference and disruption." *Filz,* 136 F.R.D. at 169 n. 7;*see also Williams,* 72 F.3d at 1103 (defendant had right to interview treating physician " without the presence or consent of opposing counsel ") (internal quotation omitted); *Doe,* 99 F.R.D. at 128-29 (presence of plaintiff's counsel during interviews of physicians unfairly enables plaintiff " to monitor [defendant's] progress ... while his own preparation is under no such scrutiny"). Further, interviews are less burdensome and more cost-effective than depositions in obtaining information from treating physicians. *See, e.g., Williams,* 72 F.3d at 1103.

The Magistrate Judge is unpersuaded by plaintiff's argument that the fiduciary relationship he has with his treating physicians prohibits the *ex parte* interviews defendants seek to conduct with his treating physicians. While it is true that plaintiff has a fiduciary relationship with his treating physicians and that plaintiff's medical records are confidential, with the filing of this lawsuit, plaintiff has placed his medical condition at issue; therefore, as evidenced by the authorizations plaintiff has executed permitting the release of his medical records to the defendants, the Magistrate Judge concludes that the defendants are authorized to receive plaintiff's medical records that are relevant to this case. Hence, defendants' counsel are also authorized to receive these medical records and, for all of the reasons stated above, are free to have *ex parte* discussions with plaintiff's treating physicians,

so long as plaintiff's treating physicians are willing to voluntarily confer with defendants' counsel, concerning the medical records that are relevant to this case.

**\*6** Plaintiff also argues that K.R.S. § 311.595(16) prohibits his treating physicians from disclosing his medical information to defendants. K.R.S. § 311.595(16) provides that any physician who has "willfully violated a confidential communication" may have his or her license suspended or revoked for a period of time. For the following reasons, the Magistrate Judge is unpersuaded by plaintiff's argument that this statute prevents his treating physicians from having *ex parte* communications with defendants' counsel, at least so far as to those portions of plaintiff's medical records that are relevant to this action are concerned: (1) defendants have not asked for the disclosure of plaintiff's communications with his treating physicians; those communications are confidential and should remain confidential; (2) by filing this lawsuit, plaintiff has placed his medical condition at issue and has authorized the release of his medical records; therefore, plaintiff's treating physicians are free to discuss plaintiff's medical records that are relevant to this case with defendants' counsel, and so long as the physician does not disclose plaintiff's communications made to the physician, there is no violation of K.R.S. § 311.595(16).

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' motion to compel plaintiff Philip Weiss to execute HIPAA-compliant authorizations permitting defendants' counsel to have *ex parte* contacts with plaintiff's treating physicians, or, alternatively, to preclude plaintiffs' counsel from having *ex parte* contacts with plaintiff's treating physicians [DE # 147] is **DENIED.**

2. Defendants' counsel are free to have *ex parte* contact and communications with plaintiff's treating physicians, so long as plaintiff's treating physicians are willing to voluntarily meet and confer with defendants' counsel, concerning plaintiff's medical records that are relevant to this action.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 6

Slip Copy, 2007 WL 2137782 (E.D.Ky.), Prod.Liab.Rep. (CCH) P 17,815
**(Cite as: Slip Copy)**


    3.  Plaintiff's treating physicians having *ex parte* communications with defendants' counsel would not be a violation of K.R.S. § 311.595(16) so long as plaintiff's communications made to his physicians, which remain confidential, are not disclosed to defendants' counsel.

E.D.Ky.,2007.
Weiss v. Astellas Pharma, US, Inc.
Slip Copy, 2007 WL 2137782 (E.D.Ky.), Prod.Liab.Rep. (CCH) P 17,815

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit C

Westlaw.

Not Reported in F.Supp.

Page 1

Not Reported in F.Supp., 1995 WL 871136 (E.D.Mich.)
**(Cite as: Not Reported in F.Supp.)**

**C**
Schwarz v. U.S.
E.D.Mich.,1995.
Only the Westlaw citation is currently available.
United States District Court, E.D. Michigan.
Edward SCHWARZ, et al., Plaintiff,
v.
UNITED STATES of America, Defendant.
**No. 94-CV-71147-DT.**

Jan. 30, 1995.

Mark C. Pierce, Robert B. Pierce, Pierce, Donovan, Birmingham, MI, for plaintiffs.
Doris D. Coles, U.S. Department of Justice, Tax Division, Washington, DC, Elizabeth J. Larin, United States Attorney's Office, Detroit, MI, for U.S.

*MEMORANDUM OPINION*

KOMIVES, United States Magistrate Judge.

I.

**\*1** Plaintiffs have filed a motion for a protective order alleging in part that, following a deposition of plaintiffs' accountant, a C.P.A. named Robert Loch, defendant "was disappointed with Mr. Loch's answers to their questions because, without notifying Plaintiff's attorneys and after expiration of the time for discovery, they attempted to get C.P.A. Loch to sign an [sic] Declaration contrary to his testimony in the Deposition and contrary to fact."

Plaintiffs assert that "[s]uch ex parte contacts with witnesses in an attempt to change their sworn testimony without notifying opposing counsel or giving opposing counsel the opportunity for cross-examination is subversive of the Federal Rules of Civil Procedure with regard to discovery ... "

The brief in support of the motion argues that there was "an element of threat just out of the nature of the proceeding. In this case, there was also an attempt at manipulation." The brief also asserts that defense counsel "had already suggested to C.P.A. Loch that the Plaintiffs were going to sue him for malpractice, apparently attempting to get him to turn on his clients. Robert Loch, to his credit, refused to do so, and instead reported the improper attempt to Plaintiffs' attorneys." The brief also notes that, while federal law may not recognize accountant-client privileges, Michigan law does, citing MCLA 339.713.

II.

Defendant's response to the motion seeks an opportunity to depose Robert Loch further. This request was granted and is embodied in the accompanying order. Following this further deposition, counsel for plaintiffs have leave to address a letter to me, with a copy to opposing counsel, should Loch's testimony indicate, in the view of counsel, that defense counsel was guilty of misconduct in violation of the Federal Rules of Civil Procedure, the Local Rules of this court, or any applicable code of ethics or conduct.

III.

The defense response asserts that, following Loch's original deposition, defense counsel received a report of plaintiffs' expert witness which expressed an opinion that Loch had a responsibility to include certain items on his clients' tax returns

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 2

Not Reported in F.Supp., 1995 WL 871136 (E.D.Mich.)
**(Cite as: Not Reported in F.Supp.)**

and that his failure to do so was a violation of the proper standards of professional conduct, responsibility and due diligence. Defense counsel concluded that plaintiffs intended to place blame on Loch for their own "failure to report over $230,000 in cash payments and raised questions that could not have been anticipated at the time that Mr. Loch's deposition was taken." Because of this, defense counsel contacted Loch and then prepared a proposed declaration for Loch to review and sign. This proposed declaration was based on the conversation between defense counsel and Loch.

IV.

Plaintiffs cite two cases in support of their view that the *ex parte* contact between defense counsel and Loch was misconduct *per se.* Neither case supports this proposition. In *Smith v. Insurance Company of North America,* 213 F.Supp. 675 (M.D.Tenn.1963), affirmed in part and reversed in part on other grounds, 334 F.2d 763 (6th Cir.1963), the conduct found to be improper by the district judge was detailed as follows:

**\*2** 1. Mrs. Trice and her counsel improperly took a sworn statement from James Nelson in an ex parte interview during a recess in the taking of Nelson's deposition in which Nelson repudiated the testimony given on the deposition.

2. Thereafter the plaintiff's counsel approached defense counsel about resumption of Nelson's cross-examination pursuant to his reservation without disclosing to them that Nelson had changed his testimony.

3. Before taking the statement they informed Nelson that he had been indicted for arson in the burning of the mill and conveyed to him the understanding that his confession previously given could be used against him in the prosecution on the indictment.

4. The statement obtained from Nelson was almost certainly false in its overall import and was unquestionably false insofar as it charged that D.C. Lee made up Nelson's prior confession story and obtained a recording of it by trickery.

5. The witness subsequently perjured himself in

this court in the course of testifying in support of the statement improperly obtained by Mrs. Trice and her counsel.

6. The plaintiff's counsel presented Jack Cole as a rebuttal witness for the very purpose of testifying to the truth of matters the plaintiff's counsel knew or should have known the witness had previously testified in a related trial were not true.

213 F.Supp. at 693. This conduct goes far beyond a mere *ex parte* telephone contact between a witness for one side who was previously deposed and counsel for an opposing party.

Likewise, *Horner v. Rowan Companies, Inc.,* 153 F.R.D. 597 (S.D.Tex.1994), does not support a finding of misconduct. Indeed, the *Rowan* court stated the following:

While the Federal Rules of Civil Procedure provide certain specific discovery devices, it is clear that no federal procedural rule explicitly permits or prohibits ex parte interviews between defendants and plaintiff's treating physicians ...

153 F.R.D. at 599. Because the *Rowan* court could find no binding federal circuit court holding, and other case authority was in conflict, it denied plaintiff's motion for sanctions for engaging in *ex parte* interviews, although it awarded sanctions as a punishment on the separate ground of dishonesty, finding that "defense counsel purposely misled opposing counsel in order to orchestrate these, at best, questionable ex parte interviews." 153 F.R.D. at 602.

V.

I decline to hold that counsel are prohibited from making *ex parte* contact with listed trial witnesses, unless such a restriction is specifically put in place in a particular case by agreement of counsel or order of the court. I find no basis for such a holding in the Federal Rules of Civil Procedure, the Local Rules of this Court, or the Michigan Rules of Professional Conduct.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                           Page 3

Not Reported in F.Supp., 1995 WL 871136 (E.D.Mich.)
**(Cite as: Not Reported in F.Supp.)**


E.D.Mich.,1995.
Schwarz v. U.S.
Not Reported in F.Supp., 1995 WL 871136
(E.D.Mich.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit
# D

Westlaw.

Not Reported in F.Supp.2d                                                                          Page 1

Not Reported in F.Supp.2d, 2005 WL 4704767 (E.D.Mich.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Croskey v. BMW of North America
E.D.Mich.,2005.
Only the Westlaw citation is currently available.
United States District Court,E.D. Michigan,
Southern Division.
William CROSKEY, Plaintiff,
v.
BMW OF NORTH AMERICA, et al., Defendants.
**No. 02-73747.**

Nov. 10, 2005.

Jody Lipton, Marc E. Lipton, Lipton Law Center,
Southfield, MI, Mark Granzotto, Royal Oak, MI,
for Plaintiff.
Jeffrey T. Gorcyca, Thomas P. Branigan, Paul T.
O'Neill, Bowman & Brooke (Troy), Troy, MI, for
Defendants.

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S OBJECTIONS TO THE
MAGISTRATE JUDGE'S MEMORANDUM
OPINION AND ORDER [136]

EDMUNDS, J.
   *1 This matter comes before the Court on
Magistrate Judge Paul J. Komives's Memorandum
Opinion and Order (Magis.Order) of February 18,
2005, regarding Defendant's access to Plaintiff's
treating physician for an *ex parte* interview in
preparation for trial. Defendant [FN1] has filed
Objections, arguing that the Magistrate erred as a
matter of law on two grounds: First, in finding that
the Health Insurance Portability and Accountability
Act ("HIPAA") preempts Michigan law regarding
physician-patient privilege, and second, in finding
that a "qualified protective order" under HIPAA
should contain requirements not expressly provided
by the HIPAA regulations.

FN1. Defendants BMW of North America
(BMW NA) and Bayerische Motoren
Werk Aktiengesellschaft (BMW AG) are
singularly referred to as "Defendant."

   This Court has reviewed the Magistrate's
Opinion and Order, the parties' moving papers, the
briefs of *amici curiae* Michigan Hospital
Association, Michigan Trial Lawyers Association,
and ProNational Insurance Company, and the
relevant law.

   The Court finds that the Magistrate did not err
on the first ground. As to the second ground,
however, the Magistrate erred by ruling that a "
qualified protective order" under HIPAA requires
specific notice to a plaintiff's counsel of a proposed
*ex parte* meeting, and plaintiff's consent. For the
reasons discussed below, the Court GRANTS IN
PART and DENIES IN PART Defendant's
Objections, and thereby REVERSES IN PART and
AFFIRMS IN PART the Magistrate's Order.

I. Standard of Review

   Rule 72(a) of the Federal Rules of Civil
Procedure governs this Court's review of a
Magistrate Judge's decision in nondispositive
matters such as this. That rule states, in relevant
part, "The district judge to whom the case is
assigned shall consider ... objections and shall
modify or set aside any portion of the magistrate
judge's order found to be clearly erroneous or
contrary to law."Fed.R.Civ.P. 72(a).

II. Discussion

   45 CFR § 164.512(e)(1) provides in part as
follows:
   Permitted disclosures. A covered entity may

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 4704767 (E.D.Mich.)
**(Cite as: Not Reported in F.Supp.2d)**

disclose protected health information in the course of any judicial or administrative proceeding:

(i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order, or

(ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:

(A) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or

(B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

**\*2** Thus, as the Magistrate correctly noted, there are three ways in which Defendant may comply with 45 C.F.R. § 164.512(e)(1): " [O]btaining a court order," "sending a subpoena or discovery request where plaintiff has been given notice of the request," or "sending a subpoena or discovery request where reasonable effort has been made to obtain a qualified protective order."(Magis. Order 19.)

The Magistrate was also correct in construing Defendant's proposed stipulation to a protective order as falling under Section 164.512(e)(1)(ii)(B). Under that section, a protective order must meet the requirements of Section 164.512(e)(1)(v), which provides,

For purposes of paragraph (e)(1) of this section, a qualified protective order means, with respect to protected health information requested under paragraph (e)(1)(ii) of this section, an order of a court or of an administrative tribunal or a stipulation by the parties to the litigation or administrative proceeding that:

(A) Prohibits the parties from using or

disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and

(B) Requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.

It seems clear that based on this language, a qualified protective order such as Defendant proposed must meet two criteria: First, it must prohibit Defendant from disclosing Plaintiff's protected information beyond the purposes of this litigation, and second, it must mandate that Defendant must return or destroy the protected information after the litigation has concluded.

The Magistrate found, however, that "in light of HIPAA's distaste for informal discovery," two additional requirements are necessary: "[Defendant] needs not only to comply with 45 C.F.R. § 164.512(e)(1), but also to give notice to plaintiff's counsel of the desire to conduct an *ex parte* meeting with plaintiff's treating physician and to give notice to the treating physician that such a meeting is not required."(Magis. Order 20.) Thus, the Magistrate's order met *and exceeded* the required criteria. "If plaintiff permits an ex parte meeting *and* if the treating physician is willing to conduct an ex parte meeting with defense counsel, plaintiff may be deemed to have waived his rights under HIPAA and the ex parte meeting may be conducted."(*Id.* (emphasis in original).)

Arguing for adoption of the Magistrate's Opinion and Order, Plaintiff contends that the additional requirements imposed by the Magistrate were appropriate, based on "the structure of 45 C.F.R. § 164.512(e)(1)(i) and (ii)":

The definition of a 'qualified protective order' in subsection (v) relates to the order that the requesting party must attempt to secure under subsection (ii) in addition to sending out 'a subpoena, discovery request, or other lawful process.' The definition of a 'qualified protective order' in no way limits the terms of the 'order' under subsection (i).

**\*3** (Pl.'s Br. in Opp'n to Def.'s Objections

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 4704767 (E.D.Mich.)
**(Cite as: Not Reported in F.Supp.2d)**

13-14.) The Magistrate made explicit, however, that "I will construe [Defendant's] statement as a request for protective order as set forth in 45 C.F.R. § 164.512(e)(1)(ii)(B)." (Magis. Order 19.) Since the Magistrate rested his finding on Part (ii), it is irrelevant whether the definition of "qualified protective order" in Section (v) limits the definition of "order" in Part (i). Plaintiff's argument is misplaced.

Plaintiff further argues,

Even if HIPAA did not require adequate notice to Plaintiff, the Magistrate was clearly within his discretion to include this condition in a protective order. It is well accepted that a magistrate judge h[a]s broad discretion to regulate the terms and conditions of a protective order entered under Fed.R.Civ.P. 26(c).*Pro Billiards Tour v. R.J. Reynolds Tobacco Co.,* 187 F.R.D. 229, 230 (M.D.N.C.1999). Before issuing a formal discovery request or seeking a subpoena, Defense counsel had already violated HIPAA by attempting to schedule secret meetings with several of Plaintiff's treating doctors. Notice is not only required, but a proper safeguard given counsel's actions.

(*Id.* at 14.)Plaintiff's reasoning is also flawed here, based again on the fact that the Magistrate rested his decision on Part (ii)(B). That Part does not require a defendant actually *get* a qualified protective order, but permits the release of information based only on the assurance that the defendant "has requested a qualified protective order from [a] court or administrative tribunal."45 C.F.R. § 164.512(e)(1)(iv)(B). Thus, Part (ii)(B) is an inappropriate means for the exercise of judicial discretion against a particular defendant. In fact, the Magistrate's Opinion and Order leaves little doubt that the additional requirements were not discretionary, but, in the Magistrate's view, required by law.

Defendant argues that the requirement of notice to Plaintiff's counsel will have the practical effect of obstructing, or precluding entirely, *ex parte* interviews, and that it is "entitled under principles of fundamental fairness to investigate the health condition of Plaintiff without interference of and without disclosing its work product to his counsel."

(Def.'s Objections to Magis. Order 18.) Defendant maintains that Plaintiff should not be permitted to use the patient-physician privilege "as both a sword and shield."Similarly, *amicus curiae* Michigan Hospital Association describes the requirements as being "analogous to sending a boxer into the ring wearing a blindfold!"(MHA Br. 2.)

These concerns are legitimate. Indeed, as *amicus curiae* ProNational Insurance Company goes to great lengths to point out (ProNational Br. 3-8.), they provide the basis for Michigan law, which would give defendants relatively unfettered access to a plaintiff's physician based on the goal of open and fair discovery. *See Damako v. Rowe,* 438 Mich. 347, 475 N.W.2d 30 (Mich.1991). This is exactly what led to the Magistrate's correct conclusion that Michigan law is less stringent than HIPAA, and is therefore preempted. Preemption does not extinguish the possibility, however, that the policy rationale behind Michigan law might fit neatly within the HIPAA framework.

**\*4** The problem with 45 C.F.R. § 164.512(e) is that it does not explicitly mention *ex parte* interviews. In fact, the requirements of a "qualified protective order" include "the return to the covered entity or destruction of the protected health information (including all copies made)," which suggests that this Section may have been intended only to cover *documentary* evidence. Given this ambiguity, the Magistrate found that additional requirements were necessary to further the goals of HIPAA.

As to the first additional requirement, notice to Plaintiff's counsel, the Magistrate was in error. Notice to a plaintiff's counsel would render superfluous Parts (ii)(A) and (ii)(B) of the disputed statute. The use of the term "or" between them makes clear that these were intended to be alternate provisions, a fact that the Magistrate correctly recognized. (Magis. Order 19.) Part (ii)(A) deals with notice to the plaintiff, while Part (ii)(B) deals with a qualified protective order from a court. Notice to a plaintiff's counsel would defeat the entire purpose utilizing Part (ii)(B) rather than Part (ii)(A), since under the Magistrate's holding, Plaintiff not only must be notified, but must also

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 4

Not Reported in F.Supp.2d, 2005 WL 4704767 (E.D.Mich.)
**(Cite as: Not Reported in F.Supp.2d)**

consent to the *ex parte* interview taking place. To allow Plaintiff to block the interview would be inconsistent with HIPAA's structure, and would impede Defendant's access to evidence. For these reasons, 45 C.F.R. § 164.512(e)(1)(ii)(B), as defined by Section 164.512(e)(1)(v), does not require specific notice to Plaintiff's counsel before Defendant conducts an *ex parte* interview with Plaintiff's treating physician. Nor does it require Plaintiff to consent to such an interview.

As to the Magistrate's second additional requirement, notice to the treating physician that he or she need not answer Defendant's questions, the Magistrate was not in error. Because a physician cannot be compelled to speak *ex parte* with defense counsel, this limited requirement does nothing to infringe on Defendant's ability to gather evidence in preparation for trial. Unless, of course, Defendant's counsel would mislead the witness, either affirmatively or by omission. The Court will not assume such a motive. Plaintiff's treating physician may choose to speak with Defendant or may choose not to, but this decision should be made with full knowledge of the circumstances.

The rules discussed above comport with a recent case recently to have addressed this very issue. In *Bayne v. Provost,* 359 F.Supp.2d 234 (N.D.N.Y.2005), the court made the following rulings:

Defendants are granted a Qualified Protective Order and Authorization to interview [Plaintiff's nurse] about the relevant events in this litigation and [Plaintiff's] medical history and condition. The Defendants shall draft for this Court to execute a Qualified Protective Order and Authorization that incorporates ... [the following terms]: (1) the Defendants are prohibited from using or disclosing the protected health information for any purpose other than this litigation; (2) the Defendants are required to either return or destroy the protected information at the end of the litigation; (3) the document shall be captioned Qualified Protective Order and Authorization and shall be used exclusively for the interview of [Plaintiff's nurse]; and (4) there shall be a recitation on the document's face in bold letters that the purpose of the disclosure is not at the request of the patient, however, he has

been put on notice of this order, and that the purpose of the information is to assist the Defendants in defense of a lawsuit brought by the Plaintiff....

*5 [I]f the Defendants comply with all of these requirements and eventually choose to call [Plaintiff's nurse] as a witness, they shall not be precluded from conducting subsequent private discussions with [that party] in preparation for trial testimony and the contents of such further discussions need not be disclosed....

[T]he Defendants shall advise [Plaintiff's nurse] that this Qualified Protective Order and Authorization does not compel her to participate in an interview against her wishes nor to occur outside the presence of her attorney if she wishes to have one present.

*Id.* at 243.

In light of the above discussion, the *Bayne* court's requirements make sense. This Court therefore holds that under 45 C.F.R. § 164.512(e)(1)(ii)(B), a qualified protective requires neither specific notice to Plaintiff's counsel nor Plaintiff's consent before Defendant may interview Plaintiff's treating physician *ex parte.* It does, however, require clear and explicit notice to Plaintiff's treating physician both as to the purpose of the interview and to the fact that the interview is not required. Only by complying with these restrictions, and the requirements made explicit under the statute, may Defendant conduct an *ex parte* interview with Plaintiff's treating physician. [FN2]

FN2. Based on Defendant's previous attempt to interview Plaintiff's treating physician *ex parte* without consent, Plaintiff petitioned the Magistrate for a court order prohibiting any further contact. Because the Magistrate held as a matter of law that Defendant needed Plaintiff's consent to conduct an *ex parte* interview of Plaintiff's treating physician, he found such an order unnecessary: "I decline to enter an order prohibiting defense counsel from scheduling ex parte meetings ... as BMW

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 4704767 (E.D.Mich.)
**(Cite as: Not Reported in F.Supp.2d)**

might do so by complying with my foregoing conclusions."(Magis. Order 23.)

Despite this Court's rejection of the Magistrate's findings as to notice and consent required for a "protective qualified order" under HIPAA, the Court finds that sanctions are not appropriate in this case, and will therefore not issue an order prohibiting Defendant from contacting Plaintiff's treating physician.

Although it is clear to the Court that Defendant never obtained Plaintiff's consent to conduct *ex parte* interviews-and in fact should reasonably have known that Plaintiff objected to such contacts-Defendant was acting in accordance with a reasonable interpretation of the law. Defendant claims that the meeting, which was scheduled on January 5, 2005, was arranged "because Plaintiff had noticed Dr. Keoleian's deposition for January 10, 2005. *Ex parte* interviews of a plaintiff's treating physicians are common in the state of Michigan. Pursuant to Michigan law, defense counsel routinely meet with treating physicians where an allegedly injured party ... [files] a personal injury claim." (Def.'s Objections to Magis. Order 2.)

The Court sees no reason to disrupt the Magistrate's ruling that sanctions are not necessary here. Defendant may conduct *ex parte* interviews with Plaintiff's treating physician in accordance with the Court's foregoing conclusions.

III. Conclusion

For the reasons discussed above, this Court GRANTS IN PART and DENIES IN PART Defendant's Objections, and thereby REVERSES IN PART and AFFIRMS IN PART the Magistrate Judge's Opinion and Order of February 18, 2005. The Magistrate erred to the extent that he required Defendant to notify Plaintiff's counsel and obtain consent for *ex parte* meetings pursuant to a Qualified Protective Order under 45 C.F.R. § 164.512(e)(1)(ii)(B).

HEMEYER, J.

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 10, 2005 by electronic and/or ordinary mail.

E.D.Mich.,2005.
Croskey v. BMW of North America
Not Reported in F.Supp.2d, 2005 WL 4704767 (E.D.Mich.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit

# E

Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 1799509 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Patton v. Novartis Consumer Health, Inc.
S.D.Ind.,2005.
Only the Westlaw citation is currently available.
United States District Court,S.D. Indiana, New
Albany Division.
Tracy L. PATTON, Plaintiff,
v.
NOVARTIS CONSUMER HEALTH, INC.,
Defendant.
**No. 4:02-CV-0047-DFH-WGH.**

July 25, 2005.

Gregory J. Bubalo, Becker Law Office PLLC,
Louisville, KY, H. Bissel Carey, III, James D. Gotz,
Paula S. Bliss, Steven B. Rotman, Robinson & Cole
LLP, Boston, MA, for Plaintiff.
C. Robert Manor, Cynthia Lynn Kendrick, Donald
Robertson McMinn, Joe G. Hollingsworth,
Katharine R. Latimer, Neil S. Bromberg, Traci
Meakem Richmond, William James Cople, III,
Spriggs & Hollingsworth, Washington, DC,
Kathleen Ann DeLaney, Delaney & Delaney LLC,
Michael Thomas Batt, Sally F. Zweig, Kristopher
N. Kazmierczak, Katz & Korin, Indianapolis, IN,
for Defendant.

ENTRY ON OBJECTION TO MAGISTRATE
JUDGE'S DISCOVERY DECISION

HAMILTON, J.
  *1 The magistrate judge issued a written
decision on December 13, 2004 denying defendant's
motion to compel plaintiff to sign documents
authorizing her treating physicians to talk privately
with defense counsel. Defendant filed a timely
objection to that ruling and seeks review under Rule
72(a) of the Federal Rules of Civil Procedure. For
reasons explained below, the court finds that the
magistrate judge's decision was contrary to law and
must be set aside. The key reasons for this decision

are set forth well in Magistrate Judge Hussmann's
own thoughtful opinion in *Shots v. CSX
Transportation, Inc.,* 887 F.Supp. 206
(S.D.Ind.1995).

  Plaintiff Tracy Patton alleges that she took
Tavist-D, a drug manufactured by defendant
Novartis Consumer Health, Inc., and that the drug
caused her to suffer a stroke hours later. Patton's
claims arise under state law. This court has
jurisdiction by reason of diversity of citizenship.
The case has been part of Multidistrict Litigation
1407, *In re Phenylpropanolamine (PPA) Products
Liability Action,* before Judge Barbara J. Rothstein
of the Western District of Washington. The pretrial
proceedings for this case in the MDL matter have
been completed. The case was returned to this court
for trial, which is scheduled for November 7, 2005.

  In managing trial preparations for this specific
case, the parties reached an impasse as to whether
defense counsel should be entitled to talk privately
with plaintiff's treating physicians. After thorough
briefing, the magistrate judge followed the approach
of the Indiana Court of Appeals in *Cua v. Morrison,*
626 N.E.2d 581 (Ind.App.1993), *aff'd and adopted,*
636 N.E.2d 1248 (Ind.1994), and held that private
interviews of plaintiff's physicians should not be
permitted. Novartis contends that Patton has waived
the physician-patient privilege and that it should be
entitled to have the legally unfettered access to
these witnesses before trial that Patton has herself.

  The broad legal framework for this issue is
clear. State law supplies the rule of decision in this
case. Accordingly, under Federal Rule of Evidence
501, "the privilege of a witness, person,
government, State, or political subdivision thereof
shall be determined in accordance with State law."
At the same time, matters of procedure in this
federal civil action are governed by federal law. See
*Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14
L.Ed.2d 8 (1965) (federal rules governed service of
process despite contrary state law).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 2

Not Reported in F.Supp.2d, 2005 WL 1799509 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d)**

The parties agree that plaintiff has waived her physician-patient privilege by filing this action and putting at issue her medical condition. See *Canfield v. Sandock,* 563 N.E.2d 526, 529-30 (Ind.1990); *Collins v. Bair,* 256 Ind. 230, 268 N.E.2d 95, 101 (Ind.1971). Such a waiver applies only to "those matters causally and historically related to the condition put in issue *and which have a direct medical relevance to the claim, counterclaim, or defense made."Collins,* 268 N.E.2d at 101 (emphasis in original). There is no indication here of any medical conditions or treatments that would be irrelevant to plaintiff's claims. Plaintiff has signed blanket releases for all medical records. She has not attempted to impose any limit on those that can be released to the defendant.

**\*2** In *Cua v. Morrison,* the Indiana Court of Appeals reversed a trial court decision allowing defense counsel to conduct private interviews with an injured plaintiff's physicians. The *Cua* court explained that the decision was "not about what information [defendant] may discover, rather, it is about how [defendant] may discover it."626 N.E.2d at 583. The state court was most troubled by the prospect that private interviews could lead to disclosure of irrelevant information that would be potentially embarrassing or worse.*Id.* at 584.In the state court's view, having the patient's own attorney present would provide sufficient protection for the patient's privacy. The court recognized that its ruling would cause some inconvenience in litigation, but it deemed that inconvenience a worthwhile trade for greater protection of patient privacy:

The relationship of patient to physician is a particularly intimate one. To the physician we bare our bodies and or psyches. We do that in confidence that what is seen and heard will remain unknown to others. The protection of that confidential relationship is worth some inconvenience to the legal process.

*Id.* at 586.

In *Shots v. CSX Transportation,* Magistrate Judge Hussmann held that the *Cua* rule was a state rule of procedure that did not control discovery in a federal civil case. *Shots,* like this case, presented claims arising under Indiana law so that Indiana law governed whether the plaintiff had waived the physician-patient privilege. 887 F.Supp. at 207. Because the plaintiff had put his physical condition at issue, he had waived the privilege as to any relevant medical conditions. Magistrate Judge Hussmann concluded that *Cua* regulated only the procedure for discovering information that was no longer privileged, and that federal law governed such matters of procedure. *Id.* This court agrees.

The court in *Shots* concluded that the Federal Rules of Civil Procedure gave the court discretion to decide the question in either direction. In *Shots* itself, where the plaintiff had not indicated there were any irrelevant medical conditions, the court held that private interviews of physicians by defense counsel would be permissible. *Id.* at 208.The court left open the possibility of prohibiting such conversations in another case where there was irrelevant but sensitive medical information. Magistrate Judge Shields reached the same result in *Eve v. Sandoz Pharmaceuticals Corp.,* 2002 WL 32153352, \*1 (S.D.Ind. May 16, 2002) (District Judge Young's entry affirming order). Magistrate Judge Baker followed *Shots* to reach the same conclusion, though without the benefit of a brief opposing such interviews, in *Everhart v. National Passenger R.R. Corp.,* 2003 WL 83569, \*1 (S.D.Ind. Jan.9, 2003).

The court believes that *Shots, Eve,* and *Everhart* were well reasoned and reached the correct results on the legal issue. In general, no party has exclusive rights to a witness. Counsel are entitled and expected to look for witnesses and to interview them. Their interviews constitute the paradigm attorney work product. See *Hickman v. Taylor,* 329 U.S. 495, 510-11, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The reasoning of *Shots, Eve,* and *Everhart* applies to this case. Plaintiff is complaining of comprehensive and permanent injuries. There is no indication of any sensitive medical condition that would not be relevant here. Moreover, the transferee judge in the MDL proceeding imposed limits on the number of depositions that could be taken. As a result, defendant did not have an opportunity to depose all of plaintiff's physicians

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 1799509 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d)**

who may be testifying at trial. An informal interview may provide the best available substitute for such a deposition to prepare for trial.

**\*3** In reaching the opposite result in this case, the magistrate judge did not identify any case-specific considerations that would distinguish the case from its predecessors in this district. The magistrate judge's opinion distinguished *Shots* on the ground that it was an FELA case under federal jurisdiction. However, the *Shots* opinion states clearly that the case arose under diversity jurisdiction and was governed by Indiana substantive law. See 887 F.Supp. at 207.

The magistrate judge in this case also opined that "the strong policy of comity between state and federal sovereignties requires the federal district court to recognize state privilege where it can be accomplished at no substantial cost to federal substantive and procedural policy," citing *Memorial Hospital for McHenry County v. Shadur,* 664 F.2d 1058, 1061 (7th Cir.1981). The magistrate judge further reasoned that the federal court, in recognizing the state privilege, must consider both the substantive privilege and the procedural protections the state has established to enforce the privilege: "State courts in Indiana have taken a strict view on how information may be discovered from the physician, and the state court ordered and defined procedural protection is sufficiently a part of the substantive privilege in Indiana to be recognized in this Court."Order of December 13, 2004 at 9.

This reasoning is not persuasive. It is contrary to law and has the effect of limiting substantially one party's, and only one party's, ability to prepare for trial by interviewing witnesses. In the *Shadur* case, federal law provided the rule of decision and governed the substance of the claimed privilege. The Seventh Circuit explained that in deciding such issues under federal law, comity should lead the federal courts to respect the state privilege. 664 F.2d at 1061. There is no issue of that type here, however. The parties agree that plaintiff Patton has waived the physician-patient privilege.

In essence, then, the magistrate judge's

reasoning erroneously defers to the state courts on matters of procedure in this federal civil case. "One of the shaping purposes of the Federal Rules is to bring about uniformity in the federal courts by getting away from local rules."*Hanna v. Plumer,* 380 U.S. at 472, quoting *Lumbermen's Mutual Casualty Co. v. Wright,* 322 F.2d 759, 764 (5th Cir.1963); see also *Park v. City of Chicago,* 297 F.3d 606, 611 (7th Cir.2002) (affirming application of federal law of discovery and evidence to address federal defendant's failure to comply with state law governing retention of public records). Accordingly, the court finds that the magistrate judge's decision here was contrary to law and must be set aside under Rule 72(a) of the Federal Rules of Civil Procedure.

In defending the magistrate judge's decision, plaintiff argues that no Federal Rule of Civil Procedure directly governs the issue of private interviews with witnesses, so that it is reasonable to look to Indiana law on the question. There is no specific rule on the subject because there is no general or specific federal prohibition on attorney interviews with potential witnesses. Instead, the right to conduct such interviews is taken for granted as a matter of federal procedure. As *Hickman v. Taylor* explained, an attorney is entitled to conduct such witness interviews (or at least to try to do so) without opposing counsel being present. 329 U.S. at 511-12.[FN1]And *Hickman v. Taylor* also shows that this right to interview witnesses is deeply embedded in the Federal Rules of Civil Procedure. See *id.* Accordingly, the ground rules for witness interviews are essentially procedural in character and thus are governed by federal law.

> FN1. In fact, where only one side has access to a witness, that fact can support a finding of extraordinary need that would justify a court order that one side produce written statements and other non-opinion work product in discovery. See *Hickman v. Taylor,* 329 U.S. at 511 ("And production might be justified where the witnesses are no longer available or can be reached only with difficulty.").

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                Page 4

Not Reported in F.Supp.2d, 2005 WL 1799509 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d)**

**\*4** These general principles of law are well-established. The key considerations were stated well by Judge Jackson of the District of Columbia in rejecting a plaintiffs' argument that the defendant should be permitted to talk with their physicians only in depositions:

As a general proposition, however, no party to litigation has anything resembling a proprietary right to any witness's evidence. Absent a privilege no party is entitled to restrict an opponent's access to a witness, however partial or important to him, by insisting upon some notion of allegiance. *See International Business Machines Corp. v. Edelstein,* 526 F.2d 37, 41-44 (2d Cir.1975); *Gregory v. United States,* 369 F.2d 185, 187-88 (D.C.Cir.1966) ; *Edmund J. Flynn Co. v. LaVay,* 431 A.2d 543, 551 (D.C.1981); 8 J. Wigmore, Evidence § 2192 (McNaughton rev. ed.1961). Even an expert whose knowledge has been purchased cannot be silenced by the party who is paying him on that ground alone. Unless impeded by privilege an adversary may inquire, in advance of trial, by any lawful manner to learn what any witness knows if other appropriate conditions the witness alone may impose are satisfied, e.g., compensation for his time and expertise or payment of reasonable expenses involved, and while the Federal Rules of Civil Procedure have provided certain specific formal methods of acquiring evidence from recalcitrant sources by compulsion, they have never been thought to preclude the use of such venerable, if informal, discovery techniques as the *ex parte* interview of a witness who is willing to speak. *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *International Business Machines Corp. v. Edelstein,* 526 F.2d at 43-44;*cf. Gregory v. United States,* 369 F.2d at 187-88; *Trans-World Investments v. Drobny,* 554 P.2d 1148, 1151-52 (Alaska 1976).

The potential for influencing trial testimony is inherent in every contact between a prospective witness and an interlocutor, formal or informal, and what a litigant may justifiably fear is an attempt by an adversary at *improper* influence for which there are sanctions enough if it occurs. *See Gregory v. United States,* 369 F.2d at 188. And there are entirely respectable reasons for conducting discovery by interview *vice* deposition: it is less costly and less likely to entail logistical or scheduling problems; it is conducive to spontaneity and candor in a way depositions can never be; and it is a cost-efficient means of eliminating non-essential witnesses from the list completely. Those are the reasons offered by defendant for what it would do here but cannot for the physicians' inhibitions deriving from the privilege of which plaintiffs are unwilling to relieve them except at deposition.

*Doe v. Eli Lilly & Co.,* 99 F.R.D. 126, 128 (D.D.C.1983) (emphasis in original) (ordering personal injury plaintiff to execute written authority for physicians to talk privately with defense counsel).

The Second Circuit's opinion in *IBM v. Edelstein* also recognizes both these general principles and the enormous practical difference between talking with a witness informally and privately, and talking with the same witness on the record and/or with opposing counsel present. See 526 F.2d 37, 41-42 (2d Cir.1975) (granting writ of mandamus to ensure defense counsel could interview witnesses informally prior to civil trial); see also *United States v. White,* 454 F.2d 435, 438-39 (7th Cir.1971) ("witnesses to a crime are the property of neither the prosecution nor the defense and ... both sides have an equal right and should have an equal opportunity to interview them"). Where an interview would not intrude on privileged communication, the court does not have the authority to prohibit one side from talking to the witness privately and informally. *E.g., Wharton v. Calderon,* 127 F.3d 1201, 1207 (9th Cir.1997) (reversing district court order prohibiting one side from interviewing witnesses privately); *IBM v. Edelstein,* 526 F.2d at 41-44 (granting writ of mandamus to set aside similar order).

**\*5** Plaintiff Patton also relies heavily on the broad discretion that federal courts have in supervising discovery. That discretion does not support a ruling, however, that allows one side unfettered and unsupervised access to important witnesses, yet prohibits such contact for the other side. None of these witnesses are represented by plaintiff's counsel. None of them have been retained as testifying or non-testifying experts. Plaintiff

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 1799509 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d)**

argues that Novartis should be required to show some specific need for private interviews. Novartis has not shown such a particularized need, but none is necessary. This is a matter of fairness and symmetry. Neither side owns these witnesses. Each side is free to contact them and to talk with them privately. The witnesses are free to make their own decisions about whether they will meet with anyone, and if so on what conditions.

Plaintiffs have pointed out that some courts have optimistically suggested that opposing counsel should agree to talk with witnesses together. See *Cua*, 626 N.E.2d at 586 ("Cooperative counsel can arrange meetings between the physician and counsel for both sides. That is hardly more of a burden than the arrangement of a meeting between the physician and counsel for one side only."); *Shots*, 887 F.Supp. at 208 ("we likewise encourage counsel to offer to opposing counsel the opportunity to be present when informal communications take place"). If counsel were cooperating on these matters, of course, the court would not need to step in and make a decision. Also, the court notes the Second Circuit's observation about experience in the *IBM* case, where the district court order requiring that counsel for both side be present proved to be "quite unworkable." The court explained:

IBM found it difficult to arrange interviews with witnesses, usually corporate executives with offices outside New York City, at times and places which were convenient to both the witnesses and opposing counsel. Moreover, interviews in the presence of opposing counsel did not lend themselves to the free and open discussion which IBM sought. Interviews transcribed by court reporters were a most unattractive alternative.

526 F.2d at 41 (granting writ of mandamus).

Defendant's legal entitlement to talk with physicians may or may not have much practical effect here. The physicians are not required to agree to such interviews. If they do agree, they are free to draw any boundaries they wish in terms of time, place, and subject matter. Plaintiff is not free, however, to threaten physicians by suggesting that they would violate the law by talking with defense counsel. If the need arises, the court would probably

adopt Magistrate Judge Shields' solution from the *Eve* case of requiring plaintiff to send a letter to the physicians with a copy of this decision and stating that she consents to the interview.

For the foregoing reasons, the magistrate judge's denial of defendant's motion to compel plaintiff to consent in writing to private interviews of treating physicians by defense counsel is contrary to law and is hereby reversed. Plaintiff shall submit such consents to defense counsel no later than fourteen days after issuance of this decision.

**\*6** So ordered.

S.D.Ind.,2005.
Patton v. Novartis Consumer Health, Inc.
Not Reported in F.Supp.2d, 2005 WL 1799509 (S.D.Ind.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit

# F

Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2003 WL 83569 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d)**

C
Everhart v. National Passenger R.R. Corp.
S.D.Ind.,2003.
Only the Westlaw citation is currently available.
United States District Court,S.D.
Indiana,Indianapolis Division.
Sonya S. EVERHART, Plaintiff,
v.
NATIONAL PASSENGER RAILROAD
CORPORATION, d/b/a Amtrak, Defendant.
**Cause No. IP01-1221-C-H/K.**

Jan. 9, 2003.

Gary W Bippus, Ricos Bippus & Ralph,
Indianapolis, IN, Robert E Harrington, Harrington
Thompson Acker and Harrington Ltd., Chicago, IL,
for Plaintiff.
Bruce A Hugon, Stuart & Branigin, Indianapolis,
IN, for Defendant.

### ENTRY ON DEFENDANT'S MOTION TO COMPEL PLAINTIFF TO EXECUTE MEDICAL AUTHORIZATION

TIM A. BAKER, Magistrate Judge.
**\*1** On or about September 2, 1999, Plaintiff
Sonya C. Everhart sustained a work-related injury
during her employment with Defendant National
Passenger Railroad Corporation (d/b/a Amtrak). As
a result, Everhart filed suit under the Federal
Employers' Liability Act (FELA), 45 U.S.C. § 51*et.
seq.,* claiming that Defendant's negligence caused
her injuries. [Compl. ¶¶ 3-4, 7]. In the discovery
process, Defendant provided Everhart with a
medical authorization which stated in pertinent part:

I [Sonya C. Everhart] authorize my health care
providers to provide to [Defendant], a copy of all
records pertaining to the shoulder and neck injuries
I sustained on or about September 2, 1999. These
records include, **but are not limited to,** reports,
consultations, x-rays, charts and office notes. I also

authorize my health care providers to discuss my
injuries with the individuals who are receiving these
records. My authorization extends to my medical
condition causally or historically related to my
injuries.

[Def.'s Ex. 1] (emphasis in original).
Essentially, Defendant wants to discover Everhart's
medical records and conduct informal, private
interviews with Everhart's physicians.

Everhart has refused to sign this release,
claiming that Defendant does not have a right to
conduct *ex parte* conferences with her health care
providers.FN1 As a result, Defendant has filed a
motion to compel Everhart to execute its medical
authorization.

FN1. Everhart failed to file an opposition
to Defendant's motion to compel.
Therefore, the Court accepts as true
Defendant's representations as to the nature
of Everhart's objections to the
authorizations. [*See* Defendant's Rule 37.1
statement, Docket # 29].

Magistrate Judge Hussmann addressed the
issue here in *Shots v. CSX Transp., Inc.,* 887
F.Supp. 206 (S.D.Ind.1995). In *Shots,* the defendant
wanted plaintiff to sign medical authorizations so
that it could "conduct discovery by way of an *ex
parte* communication with the plaintiff's treating
physician.*Id.* at 207.Judge Hussmann granted
defendant's motion to compel plaintiff to execute
medical authorizations, and the Court finds
instructive the following passage from that case:
In this particular case, the plaintiff has clearly
put his medical condition at issue in the lawsuit. He
has not indicated in his brief that he has any medical
condition which is not related to his accident, or any
condition that is "potentially embarrassing or
ruinous" which would counsel for more rigorous
protection of the privilege. We believe that the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2003 WL 83569 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d)**

Federal Rules of Civil Procedure leave to the district court the discretion whether to allow ex parte conferences. Where the plaintiff does not suggest that any other medical condition exists which merits protection from disclosure, the policy considerations which protect the physician-patient relationship can safely be subverted to those policy considerations which expedite the discovery process. We encourage counsel for the parties to arrange informal conferences with the physicians in lieu of depositions when possible to reduce expenses in this case, and we likewise encourage counsel to offer to opposing counsel the opportunity to be present when informal communications take place. But we stop short of mandating that plaintiff's counsel be present on each occasion in this case. This opinion does not foreclose the possibility that an order prohibiting ex parte conversations could be issued in other cases in which a plaintiff objects to release of medical information because there is medical information in the possession of a particular physician which is both causally and historically unrelated to the condition at issue in the lawsuit and is potentially embarrassing or ruinous.

**\*2** *Id.* at 207-08.Similarly, in this case, Everhart has placed her medical condition at issue by seeking damages for "disability" and "pain and suffering." [Compl. ¶ 8].

Everhart's physicians may have information about her medical condition that is sensitive, irrelevant, and even embarrassing. However, the Court must balance the risks of disclosure of this information with that of the Defendant's right to mount its defenses for trial and to have equal access to pertinent witnesses. In attempting to strike this balance, the Court notes that Everhart failed to file an opposition brief. As a result, any claims of privacy or other sound arguments Plaintiff might have made against disclosure are waived. This necessarily tips the balance in Defendant's favor. Therefore, Defendant is permitted to conduct *ex parte* interviews with Everhart's physicians as if they are any other fact witness.

Accordingly, Defendant's motion to compel Plaintiff to execute medical authorization is GRANTED. Within 15 days of this entry, Everhart is ORDERED to provide Defendant with the signed authorization proffered as Defendant's Exhibit 1.

So ordered.

S.D.Ind.,2003.
Everhart v. National Passenger R.R. Corp.
Not Reported in F.Supp.2d, 2003 WL 83569 (S.D.Ind.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit

# G

## Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 32153352 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

**H**
Eve v. Sandoz Pharmaceuticals Corp.
S.D.Ind. 2002.
Only the Westlaw citation is currently available.
United States District Court, S.D. Indiana,
Indianapolis Division.
Indianapolis
Ellen EVE and Matthew Eve, Plaintiffs,
v.
SANDOZ PHARMACEUTICALS CORP.,
Defendant.
**Cause No. IP 98-1429-C-Y/S**

May 16, 2002.

Trial Order

ORDER AFFIRMING MAGISTRATE JUDGE'S
DECISION

Richard L. Young, District Judge
**\*1** On September 17, 2001, Magistrate Judge
V. Sue Shields issued an entry regarding defendant's
motion to compel plaintiff Ellen Eve to sign an
authorization allowing informal private interviews
with her physicians. On October 5, 2002, the
plaintiffs filed written objections to the Magistrate
Judge's entry.

The court, having considered the written
objections, all filed documents and relevant law,
and being duly advised, hereby **OVERRULES** the
objections to the Magistrate Judge's entry on motion
to compel and **AFFIRMS** the decision of the
Magistrate Judge.

This is a product liability action in which the
plaintiffs allege that Ellen Eve took drugs which
caused her to suffer an intra cerebral hemorrhage. In

the motion before Magistrate Judge Shields, the
defendant sought an order compelling Ms. Eve to
sign an authorization form permitting her treating
physicians who may be called to testify at trial to
participate in ex parte interviews with defense
counsel in preparation for that trial. It is important
to note that these physicians have already been
deposed, and the defendant's counsel wishes to
conduct additional conferences prior to the trial date
for the purpose of clarifying the physicians'
testimony.

Magistrate Judge Shields determined that the
defendant was entitled to conduct the ex parte
interviews subject to certain restrictions on the
particular release form which would be given to the
physicians as a part of the interview process.

Under 28 U.S.C. § 636(b)(1)(A), a district
judge may set aside a magistrate judge's
determination as to matters of pretrial procedure
where it has been shown that the magistrate judge's
order is clearly erroneous or contrary to law. In this
case, Magistrate Judge Shields concluded that such
a procedure for ex parte communications with
physicians has been previously approved in this
district in *Shots v. CSX Transportation, Inc.*, 887
F.Supp. 206 (S.D. Ind. 1995). The plaintiffs argue
that the Magistrate Judge's reliance upon *Shots* is
clearly erroneous and contrary to law because the
*Shots* decision itself is incorrect and is based on an
erroneous interpretation of the Indiana case of *Cua
v. Morrison*, 626 N.E.2d 581 (Ind.Ct.App. 1993).
The plaintiffs argue that under Indiana substantive
law, all ex parte contacts with a physician are
prohibited.

The issue before this court is a close one.
However, the Indiana Court of Appeals in *Cua*
states as follows:
We note at the outset that this appeal is not
about what information Paterson may discover,
rather, it is about how Paterson may discover it.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 32153352 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 2

*Cua*, 626 N.E.2d at 583. This court believes that the issue before *Cua* was whether a state trial court abused its discretion in the manner in which it allowed discovery to be conducted in the particular case before the state court. This court agrees with the plaintiffs that in an Indiana court, ex parte communications with a physician would rarely be allowed.

**\*2** However, as *Shots* points out, when the issue before the court is not *what* may be discovered, but *how* discovery may be obtained, or (in this case) how trial preparation may be conducted, that issue is a matter of federal procedural law. Under *Hanna v. Plumer*, 380 U.S. 460 (1965), a federal procedural rule may be employed even though the federal rule differs from Indiana's state rule. *Patel v. Gayes*, 984 F.2d 214 (7th Cir. 1993).

Federal rules of civil procedure do give district courts wide discretion in the supervision of the discovery process. Magistrate Judge Shields was correct in determining that in this particular case, ex parte communications with physicians that are subject to certain restrictions would allow for more expeditious trial preparation. Specifically, the parties have conducted discovery depositions of these physicians. To require that the parties redepose each physician because the defendant wishes to clarify information as they prepare for trial would add an extra layer of costs to the trial preparation portion of this case, which is unwarranted. Should the physicians testify at trial, and should the physicians' testimony at trial differ from that in their depositions, the plaintiffs will be entitled to cross-examine any physician concerning why his or her opinion has changed, and whether that change came about as the result of communications with the defendant's counsel. This is a safeguard which prohibits the plaintiffs from being at a disadvantage with respect to any change in the physicians' testimony.

This court believes that Magistrate Judge Shields properly exercised her discretion in determining that a second set of depositions was not required in this case, and that the restrictions provided in the release were sufficient to protect the plaintiffs while allowing the defendant to efficiently prepare for trial. There being no decision which is clearly erroneous and contrary to law in this case, the Magistrate Judge's decision is affirmed.

**SO ORDERED** the 16th day of May, 2002.
RICHARD L. YOUNG, DISTRICT JUDGE, United States District Court, Southern District of Indiana

S.D.Ind. 2002.
Ellen EVE and Matthew Eve, Plaintiffs, v. SANDOZ PHARMACEUTICALS CORP., Defendant.
Not Reported in F.Supp.2d, 2002 WL 32153352 (S.D.Ind.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit

# H

# Westlaw.

Not Reported in F.Supp.                                                                          Page 1

Not Reported in F.Supp., 1993 WL 245972 (D.Kan.)
**(Cite as: Not Reported in F.Supp.)**

▷
Evertson v. Dalkon Shield Claimants Trust
D.Kan.,1993.
Only the Westlaw citation is currently available.
United States District Court, D. Kansas.
Mary Ann EVERTSON, Plaintiff,
v.
DALKON SHIELD CLAIMANTS TRUST,
Defendant.
**Civ. A. Nos. 82-1021-MLB, 85-1644-MLB,
92-1409-MLB and 1417-MLB.**

June 2, 1993.

### MEMORANDUM AND ORDER

BELOT, District Judge.
**\*1** This matter is before the court on the motions of plaintiffs for review of a Magistrate's order, and to certify a question of law to the Kansas Supreme Court. These are personal injury actions consolidated for discovery purposes, in which plaintiffs allege injuries resulting from their use of Dalkon Shield intrauterine devices manufactured by A.H. Robins Co. Plaintiffs seek review of the Magistrate's order of March 31, 1993, allowing defendant to speak *ex parte* with the various physicians treating plaintiffs.

The court reviews a magistrate's order under the terms of 28 U.S.C. § 636 and Fed.R.Civ.P. 72(a) . As to nondispositive pretrial matters, the district court reviews the magistrate's order under a "clearly erroneous or contrary to law" standard of review. *Ocelot Oil Corp. v. Sparrow Industries,* 847 F.2d 1458, 1461-62 (10th Cir.1988). Applying this standard, the court must affirm the decision of the magistrate "unless it 'on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Id.* at 1464 (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 (1948)). Because a magistrate is afforded broad discretion in the resolution of non-dispositive discovery disputes, the court will overrule the magistrate's determination only if this discretion is abused. *Comeau v. Rupp,* 762 F.Supp. 1434, 1450 (D.Kan.1991); *Detection Systems, Inc. v. Pittway Corp.,* 96 F.R.D. 152, 154 (W.D.N.Y.1982). *See also Sil-Flo, Inc. v. SFHC, Inc.,* 917 F.2d 1507, 1514 (10th Cir.1990).

Plaintiffs take issue with the Magistrate's ruling that defendant may speak *ex parte* with plaintiffs' treating physicians. When plaintiffs first sought review of the Magistrate's order, plaintiffs argued that a decision by the Kansas Supreme Court on this issue [FN1] was imminent, and that this court should defer ruling until that decision was announced. In its decision of April 16, 1993, however, the Kansas Supreme Court declined to address the issue on procedural grounds. *Morgan v. Abay,* No. 67,487, slip op. at 7-8 (Kan. Apr. 16, 1993)(1993 WL 120694). On April 21, 1993, plaintiffs filed a motion to certify this question of law to the Kansas Supreme Court. According to plaintiffs, Kansas law does not permit *ex parte* conversations between defense counsel and a plaintiff's treating physician.

Plaintiffs' entire argument proceeds from the erroneous assumption that Kansas law governs whether this court should permit *ex parte* conversations with the plaintiffs' treating physicians. It is true that Kansas state law delineates the type and scope of privileges for civil actions subject to state substantive law. *See*Fed.R.Evid. 501. The court can discern no argument by plaintiffs, however, that the Magistrate has allowed defendants to discover any information that is actually protected by the physician-patient privilege. [FN2] To the contrary, the only objection raised by plaintiffs is that defendant may not discover by means of *ex parte* communications such information as is (apparently) unprotected by the physician-patient privilege. The *method* for discovering unprivileged material-whether by written interrogatories, requests for admissions,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                              Page 2

Not Reported in F.Supp., 1993 WL 245972 (D.Kan.)
**(Cite as: Not Reported in F.Supp.)**

deposition, or *ex parte* interviews-is entirely a matter of procedure governed by the Federal Rules of Civil Procedure. *See generally*Fed.R.Civ.P. 26-37. Thus, the pronouncements of the Kansas Supreme Court with regard to the means and methods of discovering unprivileged material do not bind this court. The motion to certify must be denied because plaintiffs have asked the court to certify a question of federal law to a state court.[FN3] *See Ferguson v. Garmon,* 643 F.Supp. 335, 337 (D.Kan.1986).

*2 Nor is the issue of *ex parte* communications with treating physicians new to this court. In *Colby v. Eli Lilly & Co.,* No. 81-1542 (D.Kan., Dec. 15, 1982), Judge Crow recognized that federal law governs the procedure by which medical information-if unprotected by the privilege-may be discovered. Relying on Fed.R.Civ.P. 26 and *Ager v. Jane C. Stormont Hosp.,* 622 F.2d 496, 500 (10th Cir.1980), Judge Crow ruled that the "defendant would be entitled to privately interview a treating physician/fact witness, the same as he would be entitled to interview any other witness prior to depositions." *Colby,* slip op. at 4. Subsequently, Judge Theis and Judge Saffels also affirmed the permissibility of allowing *ex parte* communications with the treating physician of the plaintiff. *Clark v. Homrighous,* 136 F.R.D. 186 (D.Kan.1991); *Bryant v. Hilst,* 136 F.R.D 487 (D.Kan.1991).

The court finds no reason to deviate from the established law of this District. When the condition of a plaintiff is an element or factor of his or her claim, no privilege exists under K.S.A. § 60-427. Thus, *ex parte* communications with plaintiffs' physicians are subject only to the federal rules of procedure, including the rules relating to experts, *see*Fed.R.Civ.P. 26(b)(4); *Ager,* 622 F.2d at 501-01, and the requirement that requested information be relevant or reasonably calculated to lead to the discovery of relevant information, *see* Fed.R.Civ.P. 26(b)(1).

As the Magistrate noted, it goes without saying that plaintiffs' treating physicians are not required to speak informally with defendant's attorneys (or, for that matter, with plaintiffs' attorney). The Magistrate's order required defendant's counsel to

inform the treating physicians that they may decline to be privately interviewed-a requirement this court also endorses. As Magistrate Newman stated in *Bryant,* neither party "is entitled to exercise any coercion to obtain a conference with a treating physician or to preclude one." 136 F.R.D. at 493.

The court additionally notes that plaintiffs have only objected to the Magistrate's order on the grounds that it violates the Kansas physician-patient privilege. Although the court rejects this challenge, this court's order does not foreclose any valid objections that might be raised as to the federal procedure for discovering the opinions held by any treating physicians retained as experts. *See generally*Fed.R.Civ.P. 26.

Finally, the court finds no reason to impose Rule 11 sanctions upon plaintiffs. Defendant's motion for costs and fees is therefore denied.

Accordingly, the court denies plaintiffs' motion (Doc. 95) for review of the Magistrate's order, and denies plaintiffs' motion (Doc. 100) to certify a question of law.

IT IS SO ORDERED.

FN1. Contrary to plaintiffs' representations, the precise issue before the Kansas Supreme Court in *Morgan* was not whether to permit *ex parte* conversations with the plaintiffs' treating physician. As stated by the court, the issue was: "Did the trial court err in allowing a non-party treating physician *to testify as an expert witness for the defense* when, prior to trial, that physician had been contacted, ex parte, by defense counsel; ...." *Morgan,* slip op. at 3 (emphasis added). Federal law, however, generally governs this court's decisions as to the admissibility of evidence in diversity actions, *Romine v. Parman,* 831 F.2d 944, 944 (10th Cir.1987), as well as the admissibility of testimony by an expert whom a party has improperly contacted. *See Durflinger v. Artiles,* 727 F.2d 888,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                 Page 3

Not Reported in F.Supp., 1993 WL 245972 (D.Kan.)
**(Cite as: Not Reported in F.Supp.)**

891 (10th Cir.1984).                                    END OF DOCUMENT

FN2. By statute "[t]here is no privilege
under [K.S.A. § 60-427] in an action in
which the condition of the patient is an
element or factor of the claim or defense of
the patient...." K.S.A. § 60-427(d).
Plaintiffs make no attempt to argue that the
condition of each plaintiff is not an
element or factor of their respective
claims. Thus, each plaintiff "is deemed to
have waived any statutory privilege under
K.S.A. 60-427." *Werner v. Kliewer,* 238
Kan. 289, 293, 710 P.2d 1250, 1255 (1985)
. Plaintiffs' reliance on *Wesley Med.
Center v. Clark,* 234 Kan. 13, 669 P.2d
209, syl. ¶ 9 (1983) is misplaced, because
that case holds only that "[a] physician
may not reveal, ex parte, information
*subject to* the physician-patient privilege
without the knowledge and consent of the
patient or the holder of the privilege."
(emphasis added). Plaintiffs have called
the court's attention to no information that
is actually subject to the privilege, but
have only asserted a blanket objection to
the discovery of *all* medical information by
means of *ex parte* communications with
plaintiffs' treating physicians. A party
asserting a privilege does not sustain his
burden by raising only blanket objections.
*See In re Grand Jury Subpoena Duces
Tecum,* 697 F.2d 277, 279 (10th Cir.1983);
*see also Wesley,* 234 Kan. at 20, 669 P.2d
at 215 (existence of privilege as to some
documents does not justify blanket
protective order of all documents).

FN3. Additionally, the motion to certify is
subject to denial because it involves only a
non-dispositive discovery dispute that does
not present a question that "may be
determinative of the cause" now pending.
K.S.A. § 60-3201.

D.Kan.,1993.
Evertson v. Dalkon Shield Claimants Trust
Not Reported in F.Supp., 1993 WL 245972
(D.Kan.)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit

# I

Westlaw.

Not Reported in S.W.2d                                                                 Page 1

Not Reported in S.W.2d, 1994 WL 642785 (Tenn.Ct.App.)
**(Cite as: Not Reported in S.W.2d)**

**C**
Wright v. Wasudev
Tenn.App.,1994.
Only the Westlaw citation is currently available.

SEE COURT OF APPEALS RULES 11 AND 12

Court of Appeals of Tennessee.
Mrs. Marguerite WRIGHT, as the surviving widow
of George Wright, Deceased, Plaintiff/Appellee,
v.
Pramod B. WASUDEV, M.D.,
Defendant/Appellant.
**No. 01-A-01-9404-CV00176.**

Nov. 16, 1994.

Appeal from the Circuit Court for Davidson
County, at Nashville, Tennessee, Hamilton V.
Gayden, Judge.

John W. Nolan, Nashville, TN
Ward DeWitt, Jr., and Mary Ellen Morris,
Nashville, TN
David L. Steed, Nashville, TN

OPINION

TODD.
    **\*1** In this malpractice case, the Trial Court and
this Court have granted an interlocutory appeal
from an order of the Trial Court overruling the
motion of defendant, Wasudev, to require the
plaintiff to execute "authorizations for release of
medical records and for medical information in the
format as attached hereto as Exhibits 1 and 2."

    The complaint seeks damages for wrongful
death allegedly resulting from negligence of
defendant and asserts the following facts:

    In April, 1992, defendant admitted deceased to
the hospital for treatment of supposed inflammation
of or gallstones in the gallbladder. Previously,
deceased had been treated for indigestion,
heartburn, and ruptured sigmoid diverticulum, and
had undergone a colostomy, corrective colon
surgery, and a coronary bypass. Defendant
undertook laparoscopic surgery upon deceased
during which he removed adhesions and, in so
doing, punctured an intestine and failed to repair the
puncture. By subsequent surgery, defendant
undertook to repair the punctures, but deceased did
not survive the surgery.

    The answer of defendant denied negligence,
denied causing the death of deceased, and asserted
that the cause of death was "acute fulminating
pancreatitis."

    Attached to the motion of defendant to require
authorization by plaintiff, quoted above, were
Exhibits 1 and 2. Exhibit 1 read as follows:

AUTHORIZATION FOR RELEASE OF
MEDICAL INFORMATION

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in S.W.2d                                                                    Page 2

Not Reported in S.W.2d, 1994 WL 642785 (Tenn.Ct.App.)
**(Cite as: Not Reported in S.W.2d)**

Patient's Name:                          George Wright, Jr.
Date of Birth:                           10/20/23
Social Security No.:                        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

This is to authorize *any* physician or other practitioner of the healing arts, the representative of *any* hospital or clinic, and the representative of *any* supplier of *any* drugs or medications to furnish to *any* representative of the law firm of TRABUE, STURDIVANT & DeWITT, 511 Union Street, 25th Floor, Nashville City Center, Nashville, Tennessee, and to permit such representative to examine and photocopy, or receive upon request, *any* records or memoranda *they may request* regarding the physical condition, treatment and/or consultation which have been rendered to George Wright, Jr., and to allow them to see and copy *any* x-rays or other similar documents and records pertaining thereto.

A copy of this permission form shall be deemed as sufficient as the original for purposes of releasing the records and information and shall be valid for one year.

Date:_____

_____
Mrs. Marguerite Wright,
widow of George Wright, Jr.
(emphasis supplied)

Exhibit 2 read as follows:

AUTHORIZATION FOR RELEASE OF
MEDICAL INFORMATION

Patient's Name:                          George Wright, Jr.
Date of Birth:                           10/20/23
Social Security No.:                        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
                                            This is to authorize *any* physician or other

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in S.W.2d                                                    Page 3

Not Reported in S.W.2d, 1994 WL 642785 (Tenn.Ct.App.)
**(Cite as: Not Reported in S.W.2d)**

practitioner of the healing arts, the representative of *any* hospital or clinic, and the representative of *any* supplier of *any* drugs or medications to discuss the physical condition, treatment and/or consultations regarding George Wright, Jr., with *any* representative of the law firm of TRABUE, STURDIVANT & DeWITT, 511 Union Street, 25th Floor, Nashville City Center, Nashville, Tennessee.

**\*2** A copy of this permission form shall be deemed as sufficient as the original for purposes of releasing the records and information and shall be valid for one year.

*THIS AUTHORIZATION PERMITS, BUT DOES NOT DIRECT, YOU TO DISCUSS THESE MATTERS WITH THE REQUESTING REPRESENTATIVE. YOU MAY OR MAY NOT SPEAK WITH THE ATTORNEY AS YOU DECIDE.*

Date: _____

_____
Mrs. Marguerite Wright,
widow of George Wright, Jr.
(emphasis supplied)

In response, plaintiff signed and offered to defendant the following document which, apparently was not accepted:

AUTHORIZATION FOR RELEASE OF
MEDICAL INFORMATION

Patient's Name:
Date of Birth:
Social Security No.:

GEORGE WRIGHT, JR.
10/20/23
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
Ward DeWitt, or any representative of the law firm of Trabue, Sturdivant & DeWitt, 25th Floor, Nashville City Center, 511 Union Street, Nashville, Tennessee 37219. "Records and information" includes, but is not limited to, medical and psychiatric records, diagnostic test results, records and correspondence from other health care

This is directed to and authorizes any physician or other practitioner of the healing arts (including, but not limited to, psychiatrists, counselors, chiropractors, employers, insurers, and any supplier of drugs or medications) to release any records and information pertaining to George Wright, Jr. to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in S.W.2d                                                          Page 4

Not Reported in S.W.2d, 1994 WL 642785 (Tenn.Ct.App.)
**(Cite as: Not Reported in S.W.2d)**

providers, drug and substance abuse treatment records, and any other document or thing relating to the physical or mental condition of George Wright, Jr. or treatment or examination of him.

*THIS AUTHORIZATION DOES NOT PERMIT YOU TO DISCUSS THESE MATTERS WITH MR. DeWITT OR HIS REPRESENTATIVES. YOU MAY FURNISH HIM RECORDS THAT ARE REQUESTED BY HIS OFFICE. ALL MEDICAL RECORDS OBTAINED PURSUANT TO THIS AUTHORIZATION BY MR. WARD DeWITT OR HIS REPRESENTATIVES SHALL BE COPIED BY MR. DeWITT'S OFFICE AND THE SAME FURNISHED TO MY COUNSEL, JOHN W. NOLAN, III, 214 THIRD AVENUE NORTH, NASHVILLE, TN 37201, WITHIN FIVE (5) DAYS AFTER THE RECORDS ARE OBTAINED THROUGH THE USE OF THIS AUTHORIZATION.*

A copy of this document shall have the same validity and effect as the original and shall be valid for one (1) year.

DATE:                        1-16-94

The Trial Judge held:

... The Court denies the motion of the defendant and finds as the basis therefore the following:

1. Even though there is no statutory privilege in Tennessee between a patient and physician, there nevertheless is a confidential and fiduciary relationship between the physician and the patient which prohibits ex parte conferences between a treating physician and an attorney who is the plaintiff/patient's legal adversary.

2. The ethics of the medical profession as established by the Hippocratic Oath, the American Medical Association's Principles of Medical Ethics, and the Opinions of Judicial Council of the American Medical Association establish a fiduciary relationship between the physician and patient and that information disclosed to a physician during the course of relations between a physician and a patient is confidential.

**\*3** 3. In Tennessee, through the application of

/s/ Mrs. Marguerite Wright,
    widow of George Wright, Jr.

T.C.A. § 63-6-214, physicians are compelled to adhere to the ethics of the medical profession.

4. The public policy of this state is that members of the medical profession stand in a confidential or fiduciary capacity to their patients, and they owe their patients more than just medical care for which payment is extracted; there is a duty of total care that includes and comprehends giving aid to the patient in litigation, to render reports when necessary, and to give testimony when appropriate. Therefore, a treating physician may not discuss his patient's medical condition with opposing counsel except pursuant to discovery authorized under the applicable Rules of Civil Procedure, unless authorized to do so by the patient.

On appeal, the defendant/appellant presents the issues as follows:

1. Whether a patient waives the confidentiality of his or her communication with a physician when the patient files a suit seeking damages for injuries

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in S.W.2d                                                                    Page 5

Not Reported in S.W.2d, 1994 WL 642785 (Tenn.Ct.App.)
**(Cite as: Not Reported in S.W.2d)**

or a condition that the physician has examined or treated.

II. Whether a defendant in a personal injury action has a right to pursue informal discovery concerning the plaintiff's physical condition by requiring the plaintiff to authorize a physician to discuss his or her consultation with or treatment of the plaintiff if the physician consents to the discussion.

III. Whether a plaintiff's treating physician breaches his or her fiduciary duty to the patient by agreeing to be interviewed *ex parte* by the defendant's attorney when the patient has executed a written authorization permitting the physician to discuss the patient's "physical condition, treatment or consultation."

The plaintiff/appellee presents the following issues:

1. Whether the ethical principles of the American Medical Association create a confidential relationship between a physician and his patient.

2. Whether the Tennessee rules of Civil Procedure provide for ex parte interviews and, if not, should ex parte interviews by defense counsel of the plaintiff's treating physician be allowed as " informal discovery."

3. Whether the relationship of patient and physician establishes an expectation of confidentiality and a fiduciary obligation on behalf of the physician to the patient which requires the physician to keep information disclosed by the patient to the physician confidential.

4. Whether a patient waives the confidentiality of his or her communication with a physician when the patient files a suit seeking damages for injuries or for a condition that the physician has examined or treated.

5. Assuming the patient waives the confidentiality of his or her communication with a physician by filing suit, what is the nature and extent of the implied waiver.

6. Whether Tennessee Code Annotated § 63-6-214(b)(1) subjects a physician's license to suspension or revocation when a confidential disclosure is made to a third party because the Statute prohibits "unethical conduct."

*4 7. Whether a plaintiff's treating physician

breaches his or her fiduciary duty to the patient by agreeing to be interviewed ex parte by the defendant's attorney when the patient has executed a written authorization permitting the physician to discuss the patient's "physical condition, treatment or consultation."

8. Whether a defendant in a personal injury action has a right to pursue informal discovery concerning the plaintiff's physical condition by requiring the plaintiff to authorize a physician to discuss his or her consultation with or treatment of the plaintiff if the physician consents to the discussion.

9. Whether the interest of justice and the interest of society are better served by permitting a defendant to engage in ex parte interviews of an injured patient/plaintiff's treating physician.

The quoted issues reflect upon but do not identify the ultimate issue which is: whether the Trial Court erred in overruling the motion of the defendant in the form in which it was presented, including its exhibits.

Plaintiff's third issue quoted above, presents the seminal question of confidential privilege for matters disclosed to a physician by a patient.

Neither the physician nor the patient has a common law privilege against disclosure of their communications or other information derived from their relationship. *Quarles v. Southerland,* 215 Tenn. 651, 389 S.W.2d 249, 20 ALR 3rd 1103 (1964).

There is no express statutory provision for confidentiality of information in the possession of a physician. However, T.C.A. Section 63-1-120 provides that the controlling board licensing any branch of the healing arts has the duty to suspend or revoke the license of anyone licensed by the board for any one of 19 offenses, including:

(15) Willful betrayal of a professional secret.

T.C.A. Section 63-6-214 grants to the Board of Medical Examiners the power to discipline physicians for:

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in S.W.2d                                                                    Page 6

Not Reported in S.W.2d, 1994 WL 642785 (Tenn.Ct.App.)
(Cite as: Not Reported in S.W.2d)

(1) Unprofessional or unethical conduct,....
(7) Willfully betraying a professional secret.

The statutory public policy of this State forbids unprofessional or unethical conduct or the betrayal of a professional secret by any licensed physician.

Ethics of the medical profession may affect the propriety of disclosures by a physician, but evidence of such ethics is not properly before this Court in this appeal. Thus, plaintiff's first and sixth issues, quoted above, cannot be discussed.

The Courts have the power to compel disclosure by a physician by subpoena, and the witness is the proper party to assert the public policy. *State v. Feers,* Tenn. Cr.App.1983, 659 S.W.2d 370. In the present case, no witness is under subpoena and no witness is a party to this appeal. Therefore, the rights and duties of a physician-witness are not before this Court in this appeal.

Defendant's first issue and plaintiff's fourth issue, quoted above, question whether a patient's privilege is waived by a suit seeking damages which the physician has "examined or treated." This narrow issue does not correspond to the broad waiver demanded by the motion under consideration.

*5 No Tennessee authority is found on the waiver of physician's patient privilege.

*McCormick on Evidence,* Third Edition, Section 103 contains a thorough discussion of the widely divergent holdings of the various jurisdictions on the waiver of physician-patient privilege by suit for personal injury. The text states:

[T]he clearly preferable position is that waiver of the privilege occurs upon the commencement of the action; [citing *Petition of Trinidad Corp.,* 238 F.Supp. 928 (E.D. Va.1965); *Mathis v. Hildebrand;* Alaska 1968, 416 P.2d 8; *Collins v. Blair,* 256 Ind. 230, 268 N.E.2d 95 (1971); *Glenn v. Kerlin,* La.App.1971, 248 So.2d 834; *State ex rel McNutt v. Keet,* Mo.1968, 432 S.W.2d 597; *Mathison v.*

*Poulen,* 134 Vt. 158, 353 A.2d 327 (1976); and 21 ALR 3rd 912.]

In the absence of published Tennessee authority, this Court holds that the institution of a personal injury suit which presents issues requiring the disclosure of medical information effectively waives such physician-patient privilege as the injured party might assert under Tennessee laws or public policy as to evidence relevant to the issues.

Plaintiff's fifth issue, quoted above, questions the extent of the waiver by filing suit. A physician-patient privilege is provided in North Carolina by statute which also provides:

[T]he court, either at trial or prior thereto ... may compel such disclosure when, in his opinion, the same is necessary to a proper administration of justice. NC69, § 8-53 (1981). In *Sims v. Charlotte Liberty Mutual Insurance Co.,* 257 N.C. 33, 125 S.E. 326 (1962) said:

It seems to us that the privilege statute, when strictly applied without the exercise of discretion on the part of the judge, is more often unjust than just.... Our Legislature intended the statute to be a shield and not a sword.... Judges should not hesitate to require disclosure where it appears to them to be necessary in order that the truth be known and justice done. 125 S.E.2d at 331.

This Court cannot improve upon the phraseology of the North Carolina Court in applying the doctrine of waiver to the limited confidentiality recognized in Tennessee. The waiver by suit applies to all information deemed by the Trial Court to be necessary in order that the truth be known and justice done.

Defendant's third issue and plaintiff's seventh issue, quoted above, question the effect of a written authorization from a patient to a physician to discuss the patient's "physical condition, treatment or consultation." This is a request for a declaratory judgment upon an issue not properly raised before the Trial Court and without the participation of an important party-the physician in question.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in S.W.2d                                                                    Page 7

Not Reported in S.W.2d, 1994 WL 642785 (Tenn.Ct.App.)
**(Cite as: Not Reported in S.W.2d)**

Plaintiff's second issue inquires as to the contents of Tennessee Rules of Civil Procedure which are as available to the parties as to this Court. The rules, which speak for themselves, do not provide for "informal discovery." As to the " allowance" of "informal discovery," this Court is not the rule-making authority of this State.

**\*6** Likewise, plaintiff's ninth issue presents a rule-making question not within the jurisdiction of this Court.

Plaintiff's eighth issue presents the broad question of whether a defendant has a right to a court-ordered authorization from the plaintiff to permit his physician to discuss his consultation with or treatment of the plaintiff with the consent of the physician. It is not within the scope of this appeal to anticipate possible circumstances and make definitive rulings thereon.

In 50 ALR 4th 714 is a lengthy and comprehensive analysis of the widely varying decisions in various jurisdictions made under various statutory situations. This Court finds no clear predominance of trend or authority worthy of emulation in this State.

Ordinarily a court is capable of obtaining information without peremptory orders to parties to issue "authorizations." However, this Court is not prepared to hold that no situation could arise which would authorize a Trial Court to require a litigant to order the release of relevant confidential information. If such should be justified, the necessary information should be strictly specified.

The motion of defendant, quoted above, seeks no declaration of the rights and duties of physician-witness, but asserts a right of defendant to have the Court compel the plaintiff to sign " authorizations" prepared by defendant.

Exhibit 1, quoted above, purports to authorize unlimited access to and copy privilege in respect to any and all medical records of deceased without limitation in time or otherwise. On its face it is overbroad for the legitimate needs and purposes of defendant.

Exhibit 2, quoted above, is equally overbroad. Although the authorization states that it does not *direct* informal discussions with defendant's representative, its obvious purpose is to influence the recipient to engage in *ex parte* discussions. Except for any "professional secrets," or "unethical conduct" (and this record is silent in this regard) there is no legal need for such an authorization.

Any citizen, including a physician, has a legal right to discuss any unprivileged matter with any person if he desires to do so.

There is no legal duty upon any citizen to engage in any discussion with the representative of any litigant in a civil matter. The only compulsory disclosure of facts in civil litigation is by subpoena from a court which has the power to determine the limits and conditions of disclosure.

If a physician has refused to discuss relevant facts on grounds of privilege, defendant has a right, after notice to that physician, to have a ruling as to the efficacy of the claimed privilege. That request has not been made.

If a physician has refused discussion for lack of consent of the representative of deceased, defendant may seek a ruling in this regard, but he has not done so.

In short, this record does not demonstrate an extraordinary need for the extraordinary relief requested. If an extraordinary need should be shown, the extraordinary remedy of judicial duress should be limited to the evidence which reasonably relates to the issues in the present case.

**\*7** During oral argument of this appeal, counsel for defendant professed a disposition to engage in informal joint discovery by agreement, which is by far to be preferred over continual litigation over detail.

It is hoped that the principles mentioned herein will be of some assistance to the parties in reaching the merits of this case without undue imposition upon persons or privileges.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in S.W.2d                                                          Page 8

Not Reported in S.W.2d, 1994 WL 642785 (Tenn.Ct.App.)
**(Cite as: Not Reported in S.W.2d)**

As indicated above, this Court does not concur in all of the reasons stated by the Trial Court for its decisions. For the reasons stated herein, the judgment of the Trial Court is affirmed. Costs of this appeal are taxed against the defendant-appellant. The cause is remanded to the Trial Court for further proceedings.

Affirmed and Remanded.

CANTRELL, J., and CAIN, Sp. J., concur.

JUDGMENT

In accordance with the opinion of the Court filed herein, the order of the Trial Court is affirmed. Judgment is rendered against the appellant, Pramod B. Wasudev and his surety, Ward DeWitt, Jr., for costs of this appeal for which execution may issue. The cause is remanded to the Trial Court for further proceedings.

Tenn.App.,1994.
Wright v. Wasudev
Not Reported in S.W.2d, 1994 WL 642785 (Tenn.Ct.App.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit

# J

Westlaw.

Not Reported in F.Supp.                                                           Page 1

Not Reported in F.Supp., 1986 WL 9159 (D.Minn.)
**(Cite as: Not Reported in F.Supp.)**

▷
Thomsen v. Mayo Foundation
D.Minn.,1986.
Only the Westlaw citation is currently available.
United States District Court, D. Minnesota, Fourth
Division.
Theron and Peggy Thomsen
v.
Mayo Foundation
**No. 4-84-1239.**

Aug. 20, 1986.

Reed K. MacKenzie, Hvass, Weisman & King,
Minneapolis, and Robert D. Houghton,
Shuttleworth & Ingersoll, Cedar Rapids, Iowa, for
plaintiffs.
Paul B. Klaas, Dorsey & Whitney, Minneapolis,
and Rick Colvin, Mayo Foundation, Rochester, for
defendants.
JAMES M. ROSENBAUM, United States District
Judge.

*1 This case comes before the Court on
defendant's objections to an order of United States
Magistrate J. Earl Cudd. That order denied
defendant's motion to compel plaintiff Theron
Thomsen to sign a discovery-related consent form.
For the reasons stated below, the previous order is
vacated, and defendant's motion is granted.

*Facts*

This action concerns plaintiffs' allegations of
medical malpractice against defendant arising from
treatment in 1982 and 1983. Discovery revealed
that, in addition to his treatment by defendant, Mr.
Thomsen has been under the care of certain
physicians in Iowa. Defendant seeks to contact
these doctors. In order to make such contact,
defendant requested plaintiff's signature on a form
granting permission to the Iowa physicians to make
direct contact with defendant's counsel.
Defendant's proposed form indicates that the

physicians are free to speak to defendant's counsel,
but imposes no affirmative obligation that they do
so. Further, the form states that the
communications may be in private; plaintiffs need
not be present.

Mr. Thomsen refused to sign defendant's
proposed form, leading to the present motion.
Defendant moved for an order compelling Mr.
Thomsen to sign, and that motion was heard before
the magistrate. In an order, dated March 25, 1986,
the magistrate found that, by filing the present
malpractice action, Mr. Thomsen waived any
physician/patient privilege otherwise present with
respect to the Iowa doctors. Further, the Court
held that federal discovery laws would apply in this
case. Finally, the Court held that plaintiffs could
not be compelled to sign defendant's consent forms.

Defendant timely appealed from the
magistrate's decision.

*Analysis*

Neither side disputes the conclusion that
plaintiffs have waived any privilege they may have
had respecting the Iowa physicians, and neither
contests the determination that federal discovery
law applies. *Keller v. Orion Ins. Co.,* 285 F.Supp.
906 (D.Minn.1968). This Court's determination of
defendant's motion therefore turns on the ultimate
question of whether federal discovery law permits
*ex parte* communication with treating physicians
once patient/physician privileges have been waived,
and in that regard, whether a plaintiff may be
compelled to sign a form consenting to that contact.

Few decisions directly address this issue. The
Minnesota Supreme Court held in 1976 that, under
Rule 35.04 of the Minnesota Rules of Civil
Procedure (Minn.R.Civ.P.), *ex parte* interviews
with treating physicians are not permitted.
*Wenninger v. Muessing,* 240 N.W.2d 333
(Minn.1976). This case, relied upon below, only

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                        Page 2

Not Reported in F.Supp., 1986 WL 9159 (D.Minn.)
**(Cite as: Not Reported in F.Supp.)**

discusses the issue of *ex parte* contact under Minnesota state rules.

The only federal case known to the Court which considers the present issue under a federal evidentiary rubric is *Doe v. Eli Lilly & Co.,* 99 F.R.D. 126 (D.D.C.1983). The court there concluded that the institution of a medical malpractice action, by putting the plaintiff's medical condition at issue, constitutes a waiver of physician/patient privilege as to treating physicians. *Id.,* 99 F.R.D. at 128. The Court accordingly granted defendant's motion to compel plaintiff to authorize his physicians to speak with defendant's counsel.

**\*2** The difference between the Minnesota outcome in *Wenninger* and the federal result in *Doe* is the difference between Minnesota procedural and federal evidentiary law. Under Minnesota's procedural law, this evidence could not be sought in the form requested. Rule 35.04, Minn.R.Civ.P. But under federal evidentiary law, the contact is permitted. This is because Rule 501 of the Federal Rules of Evidence establishes that, in the federal courts, "... the privilege of a witness ... shall be governed by the principles as they may be interpreted by the courts of the United States...." The doctor/patient privilege is uniformly recognized in the common law of Minnesota. At the same time, in this case, all agree the privilege has been abandoned by the nature of the present claim.

The question is then presented: In the *absence* of a privilege, how may one approach the doctor-as-witness in a federal case? The answer is simple, in the absence of a privilege, each citizen is available within the normal bounds as a witness, and the Court knows of no other witness who, absent a privilege, may not be examined *ex parte* if the person to be examined consents. There is no reason to deviate simply because the witness is a physician when his doctor/patient privilege is removed. In the absence of any Congressionally expressed concern that physicians be treated in any manner differently than other non-party witnesses, the Court determines that defendant is entitled to execution of the consent forms it seeks.

Accordingly, IT IS ORDERED that:

Defendant's motion to compel plaintiffs to sign a form allowing defendant to confer privately with plaintiffs' treating physicians in Iowa is granted.

D.Minn.,1986.
Thomsen v. Mayo Foundation
Not Reported in F.Supp., 1986 WL 9159 (D.Minn.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit

# K

Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 2066772 (D.Minn.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Lillebo v. Zimmer, Inc.
D.Minn.,2004.
Only the Westlaw citation is currently available.
United States District Court,D. Minnesota.
Allen LILLEBO and Patricia Lillebo, Plaintiffs,
v.
ZIMMER, INC., Defendant.
Evelyn REILING and Paul Reiling, Plaintiffs,
v.
ZIMMER, INC., Defendant.
**No. Civ.03-2919 JRT/FLN, Civ.03-2920
JRT/FLN.**

Aug. 30, 2004.

Daniel A. O'Fallon and Stephanie J. Kravetz,
Robins, Kaplan, Miller & Ciresi L.L.P.,
Minneapolis, MN, for plaintiffs.
Kim Schmid and Courtney Candalino, Bowman &
Brooke, L.L.P., Minneapolis, MN; Albert J. Dahm,
Michael Elvin, Dahm & Elvin, L.L.P., Fort Wayne,
IN, for defendant.

ORDER AFFIRMING THE ORDER OF THE
MAGISTRATE JUDGE

TUNHEIM, J.
    *1 Plaintiffs brought this action against
defendant Zimmer, Inc. ("Zimmer") alleging that a
defect in Zimmer's hip implant, Centralign, gives
rise to medical products liability. After learning of
Zimmer's intent to conduct an *ex parte* interview of
one of their physicians, plaintiffs sought a
protective order to prevent Zimmer from
interviewing their treating physicians without first
giving notice to plaintiffs pursuant to Minnesota
Statute § 595.02. United States Magistrate Judge
Franklin L. Noel granted plaintiffs' Motion for
Protective Order on April 1, 2004, prohibiting
Zimmer from conducting *ex parte* interviews with
any of plaintiffs' treating health care providers.

Zimmer appeals. For the reasons set forth below,
the Court affirms the Magistrate Judge's order.

ANALYSIS

I. Standard of Review

    The standard of review applicable to an appeal
of a magistrate judge's order on nondispositive
pretrial matters is extremely deferential. *Reko v.
Creative Promotions, Inc.,* 70 F.Supp.2d 1005,
1007 (D.Minn.1999). This Court will reverse such
an order only if it is clearly erroneous or contrary to
law. 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a);
D. Minn. LR 72.1(b)(2). The Court will not reverse
such an order unless, upon review of the parties'
submissions, the Court is left "with the definite and
firm conviction that a mistake has been committed."
*Chakeles v. Commissioner of Internal Revenue,* 79
F.3d 726, 728 (8th Cir.1996).

II. Minnesota law rather than federal law controls
this question.

    Zimmer argues, as it did to the Magistrate
Judge, that, assuming that the information it seeks
may be privileged, federal law, as opposed to state
law, should be applied to determine the scope of
that privilege. The Magistrate Judge appears to
have disagreed. The Magistrate Judge cited *Gobuty
v. Kavanagh,* 795 F.Supp. 281 (D.Minn.1992) in
support of the order. As in this case, the defendants
in *Gobuty* appealed a magistrate judge's order
concluding that, under Minnesota law, the plaintiff's
waiver of physician-patient privilege did not permit
defendant to interview plaintiff's treating physicians
without providing fifteen days notice to plaintiff and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 2066772 (D.Minn.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 2

permitting plaintiff's representative to be present at the interview. *Id.* at 282.In affirming the magistrate judge, the court in *Gobuty* conducted a thorough analysis and concluded that § 595.02 and Minnesota Rule of Civil Procedure 35.04 do not directly conflict with a federal rule and may have a substantial effect on the litigation, and therefore control the extent of physician-patient privilege in federal diversity cases. 795 F.Supp. at 287-88 (discussing and applying *Kuehn v. Shelcore, Inc.,* 686 F.Supp. 233 (D.Minn.1988) and *Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938)).

This Court acknowledges, as did the Court in *Gobuty,* that *Filz v. Mayo Foundation,* 136 F.R.D. 165 (D.Minn.1991), reached the opposite conclusion.[FN1] However, the *Gobuty* court persuasively and thoroughly explained its disagreement with the *Filz* result. The reasoning and conclusion of the court in *Gobuty* recently has been cited approvingly and applied in this District. *See, e.g., In re Baycol Prods. Litig.,* 219 F.R.D. 468, 473 (D.Minn.2003). In light of the foregoing, the Magistrate Judge's apparent determination that Minnesota law defines the scope of the physician-patient privilege in this case is neither clearly erroneous nor contrary to law.

> FN1. The Court also observes that the Court in *Gobuty* noted that even if it had concluded that federal law governed the scope of the privilege, it was "not convinced that the federal rules generally permit ex parte interviews of plaintiffs' treating physicians."*Gobuty,* 795 F.Supp. at 289, n. 2 (citations omitted).

III. Minnesota law prohibits *ex parte* interviews of the type contemplated by defendant without first giving notice to plaintiffs.

**\*2** Zimmer argues that the Magistrate Judge's protective order is contrary to law because it prohibits *ex parte* interviews with plaintiffs' physicians about non-privileged information. Plaintiffs, in placing their medical conditions at issue, have waived physician-patient privilege with

respect to treatment for those conditions. Minn. R. Civ. P. 35.03. That waiver, however, is limited by Minnesota Rule of Civil Procedure 35.04 ("Rule 35.04"), which provides only for disclosure of medical records related to the condition at issue. *See also In re Baycol,* 219 F.R.D. at 470;*Youngren v. Youngren,* 556 N.W.2d 228, 233 (Minn.1996). Rule 35.04 prohibits depositions of treating physicians "except upon order of the court for good cause shown ... and notice to the parties...."

Informal discussions with treating physicians are governed by Minnesota Statute § 595.02, subd. 5 :

This waiver [of physician-patient privilege] must permit all parties to the action, and their attorneys or authorized representatives, to informally discuss the information or opinion with the health care provider if the provider consents. Prior to an informal discussion with a health care provider, the defendant must mail written notice to the other party at least 15 days before the discussion. The plaintiff's attorney or authorized representative must have the opportunity to be present at any informal discussion. Appropriate medical authorizations permitting discussion must be provided by the party commencing the action upon request from any other party.

Minnesota Statute § 595.02 was enacted to ease the restrictive scheme announced by the Minnesota Supreme Court in *Wenninger v. Muesing,* 240 N.W.2d 333 (Minn.1976), which required a plaintiff's written consent before a defendant could interview plaintiff's treating physician. 240 N.W.2d. at 336. The statute, rather than requiring a patient's permission, permits such interviews, provided the plaintiff is given notice and the opportunity to be present. The statute does not " allow[ ] unfettered access [by defendants] to plaintiffs' physicians."*In re Baycol,* 219 F.R.D. at 471.

Zimmer emphasizes that it wishes to interview plaintiffs' physician about his professional experience with and opinion of Centralign, based on his communications with the FDA in 1997 and 2000. Zimmer contends that the general nature of the interview and the physician's extensive use of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 2066772 (D.Minn.)
**(Cite as: Not Reported in F.Supp.2d)**

the Centralign make it possible for the physician to discuss his experience with the Centralign without implicating plaintiffs' treatment. Zimmer argues that the information it seeks is not privileged, and that any applicable Minnesota law restricts only discussions of privileged information.

In support of its argument, Zimmer cites *Maetzold v. Walgreen Co.,* in which the state court permitted plaintiff's physician to appear as an expert witness and to answer hypothetical questions which excluded information gained by the physician in treating plaintiff. 83 N.W.2d 233, 234-35 (Minn.1957). The instant facts are distinguishable. In *Maetzold,* the expert offered testimony in open court. Here, Zimmer wishes to conduct private interviews with plaintiffs' treating physician.

*3 Whether or not Zimmer intends to pose questions specifically implicating plaintiffs' treatment, the presence of plaintiffs' counsel at any informal interview is required because it "permits the patient to know what his doctor's testimony is, allays a patient's fears that his doctor may be disclosing personal confidences, and thus helps preserve the complete trust between doctor and patient which is essential to the successful treatment of the patient's condition."*In re Baycol,* 219 F.R.D. at 471 (citing *Wenninger,* 240 N.W.2d at 336-37.) " The presence of the patient's attorney during the doctor's examination also helps protect the doctor from unwittingly and improperly disclosing medical information about his patient."*Id.* Permitting Zimmer to conduct *ex parte* interviews of plaintiffs' physician is contrary to the language and purpose of the statute as interpreted by this Court and Minnesota courts.

This Court has previously stated that, on its face, Minnesota Statute § 595.02"does not require, or even allow," defendants to conduct *ex parte* physician interviews.[FN2]*In re Baycol,* 219 F.R.D. 468;*Gobuty v. Kavanagh,* 795 F.Supp. 281 (D.Minn.1992).*See also Wenninger,* 240 N.W.2d 333. Plaintiffs must be given notice and an opportunity to be present at the interview. *See In re Baycol,* 219 F.R.D. at 470-71;*Blohm v. Minneapolis Urological Surgeons,* 442 N.W.2d 812 (Minn.1989); *see also Wenninger,* 240 N.W.2d 333

. The Magistrate Judge's Order granting plaintiffs' protective order is not clearly erroneous or contrary to law.

> FN2. Nothing in Minnesota Statute § 595.02, subd. 5, or the Magistrate Judge's Order precludes Zimmer from deposing plaintiffs' physician, as appears to be planned, in addition to conducting an informal discussion with the physician in accordance with the statute.

**IV. Plaintiffs' Request for Costs**

Plaintiffs "ask that the defendant pay the costs and attorney's fees associated with opposing this appeal."In light of the conflicting authority within this District with respect to the issues raised in this appeal, the Court finds that awarding costs to plaintiffs is not warranted. The Court accordingly concludes that each side should bear its own costs.

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, IT IS HEREBY ORDERED that the Order of the Magistrate Judge dated April 1, 2004 [Civ. No. 03-2919, Doc. No. 41; Civ. No. 03-2920, Doc. No. 44] is AFFIRMED.

D.Minn.,2004.
Lillebo v. Zimmer, Inc.
Not Reported in F.Supp.2d, 2004 WL 2066772 (D.Minn.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit

# L

LEXSEE



Analysis
As of: Feb 04, 2008

**TAMMI HARPER, Plaintiff, v. HANS BRINKE, SR., and JIMMIE BRINKE, Defendants.**

**No. 3:06-cv-412**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE**

*2007 U.S. Dist. LEXIS 5591*

**January 23, 2007, Filed**

**SUBSEQUENT HISTORY:** Motion denied by *Harper v. Brinke, 2007 U.S. Dist. LEXIS 8934 (E.D. Tenn., Feb. 6, 2007)*

**COUNSEL:** [*1] For Tammi Harper, Plaintiff: G Wilson Horde, LEAD ATTORNEY, Kramer, Rayson, Leake, Rodgers & Morgan, LLP, Knoxville, TN; Glenn V Whitaker, Joseph W Harper, Michael L Rich, LEAD ATTORNEYS, Vorys, Sater, Seymour and Pease LLP, Cincinnati, OH.

For Hans Brinke, Sr, Jimmie Brinke, Defendant: K.O. Herston, LEAD ATTORNEY, Herston Law Office, PLC, Knoxville, TN.

**JUDGES:** Leon Jordan, United States District Judge.

**OPINION BY:** Leon Jordan

**OPINION**

**MEMORANDUM AND ORDER**

This civil action is before the court on the defendants' motion to strike the complaint [doc. 3]. The plaintiff has responded [doc. 8], and the motion is ripe for the court's consideration. The court finds that oral argument is not necessary, and for the following reasons the motion will be denied.

The defendants' first argument is that the complaint states the home addresses of the parties. The plaintiff, however, has filed an Amended Complaint that corrects this alleged error. Thus, this argument is moot.

Second, the defendants complain about the use of the plaintiff's first name in the complaint while the defendants' last name is used, an alleged violation of Local Rule 83.3(f). This Local Rule, however, concerns "courtroom [*2] decorum" and has no application to pleadings. The court finds that the complaint need not be stricken on this basis.

The defendant's final argument is that the complaint contains material that is "scandalous." *See Fed. R. Civ. P. 12(f)* (a court may order matters stricken from the complaint if they are "redundant, immaterial, impertinent, or scandalous"). In this case, the factual allegations in the complaint and Amended Complaint describe in some detail the acts of sexual abuse the plaintiff allegedly suffered at the hands of her step-father, defendant Hans Brinke. It is these allegations that the defendants seek to have stricken. In response, the plaintiff contends that the case is about sexual molestation and the acts that occurred are the very basis of the complaint. Relying on the case cited by the defendants, the court finds that the allegations do not "unnecessarily" reflect on the moral character of the defendants, and they have more than a possible relation to the controversy. *See Khalid Bin Talal Bin Abdul Azaiz Al Seoud v. E.F. Hutton & Co., 720 F. Supp 671, 686 (N.D. Ill. 1989).*

The defendants also suggest that [*3] the factual allegations were included in the complaint for an "improper motive." In support of this argument, the defendants complain that the plaintiff sent copies of the complaint to some family members and some of defendants' neighbors. The plaintiff's response to this assertion is

2007 U.S. Dist. LEXIS 5591, *

telling. By affidavit, the plaintiff's husband explains that he sent copies of the complaint as alleged after he discovered that the defendants' attorney had contacted these same individuals and "made representations to these individuals regarding the complaint that were untruthful." Thus, the defendants' argument appears to be disingenuous, at best.

For these reasons, it is hereby **ORDERED** that the defendants' motion to strike the complaint is **DENIED.**

ENTER:

*s/ Leon Jordan*

United States District Judge

# Exhibit
# M

**1/30/2007  Chen, Min-Chun (In Re: Aredia & Zometa Litigation)**

```
1          her

2          at this point?

3     A    Not that I know of.

4     Q    Prior to the start of today's deposition, have you

5          ever had any contact or communications with Mr.

6          Kelly, who is representing Ms. Hill in this case?

7     A    Just briefly prior to this particular deposition

8          this

9          morning.

10    Q    And how long did you speak with Mr. Kelly this

11         morning?

12    A    I think close to eight minutes to ten minutes.

13    Q    Okay.  And what did you discuss with Mr. Kelly?

14    A    He pretty much just walked me through what type of

15         questions might be asked.  And he again also again

16         indicated to me that he again -- whether I have any

17         idea about the ONJ, this type of thing.  It was kind

18         of a broad questioning, this type of thing.

19    Q    Okay.  And what did you tell Mr. Kelly?

20    A    I tell him that, yeah, again, I certainly actually

21         know the patient and that I know what this

22         particular matter is all about.  And then I also
```