## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| Aredia® and Zometa® | ) | |
| Products Liability Litigation | ) | No. 3:06-MD-1760 |
| (MDL No. 1760) | ) | |
| | ) | Judge Campbell |
| **This Document Relates to:** | ) | |
| 3:06-cv-00377 (Punnose) | ) | Magistrate Judge Brown |
| 3:06-cv-00381 (Hogan) | ) | |
| 3:06-cv-00521 (Brodie) | ) | |
| 3:06-cv-00550 (White) | ) | |
| 3:06-cv-00659 (Crews) | ) | |
| 3:08-cv-00068 (Fussman) | ) | |
| 3:06-cv-00069 (Napolitano) | ) | |
| 3:08-cv-00071 (Deutsch) | ) | |
| 3:07-cv-01198 (Melau) | ) | |
| 3:07-cv-00573 (Anderson) | ) | |
| _____ | ) | |

## PLAINTIFFS' STEERING COMMITTEE'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY RESPONSES

Comes Now the Plaintiffs Steering Committee ("PSC") and pursuant to Federal Rule Civ. Pro. 37(a)(2) and Local Rule 37.01 moves to compel discovery responses of  Defendant Novartis.

Introduction

The PSC and Novartis have had a host of discovery disputes.  The remaining disputes are reduced to writing by an exchange of letters earlier this month.  In addition, in the last week Novartis has responded to certain discovery, the latest being served (timely) yesterday.  The PSC does not wish to move on these

responses  until they have attempted to work out any disputes.  The Court ought to compel Novartis to produce the material where disputes are ripe and the parties have diligently attempted to work out their conflicts, and allow the PSC to bring any disputes over the recently filed material to its attention in the future.

Facts

The remaining discovery production issues known to the PSC on June 11, 2008 were reduced to writing and consolidated many requests and depositions by Bart T. Valad, of Valad & Vecchione of the PSC by letter to Defendant's counsel Robert Johnston, of Spriggs & Hollingsworth dated June 11, 2008. (Attached as Exhibit A to Plaintiff's Memorandum in Support of the PSC'S Motion to Compel Production.)

Mr. Valad pointed out a number of issues that remained unclear or in disputed.  On June 17, 2008 Mr. Robert Johnston, of Spriggs & Hollingsworth, Novartis' counsel responded, producing certain responses, and clarifying certain positions and stating Novartis' final position on other longstanding disputes.   Mr. Johnston responded to these outstanding issues and stated Novartis' remaining objections by letter dated June 17, 2008. (Attached as Exhibit B to Plaintiff's Memorandum in Support of the PSC's Motion to Compel Production.)

The key outstanding and remaining issues are laid out below pursuant to LR 37.01, first Mr. Valad's request and second the response of Mr. Johnston:

A. <u>The Redaction Issue</u>

1. Redactions.  Novartis's production of documents includes more than 100,000 redactions on the basis of relevancy.  Prior orders of the Court did not require Novartis to produce unredacted versions of these documents, over Plaintiffs' objections.  Will Novartis, without waiving any objection to admissibility, produce unredacted versions so that Plaintiffs can make their own evaluation of the content and relevance of these documents?

**Johnston's Response:**  Among the 11.6 million pages NPC has produced in this litigation are documents containing redactions.  These redactions fall within one of three categories:  a) FDA-regulation-mandated redactions; b) redactions of personal information; and c) redactions of "other drug" information that was not responsive to plaintiffs' request.  Redactions were not based, as you suggest, merely on a lack of "relevance."  In fact, a significant amount of arguably irrelevant information was produced to plaintiffs.  As you well know, plaintiffs are not entitled to the discovery of non-responsive information about other pharmaceutical products in NPC's portfolio and NPC has no obligation to make that information available to plaintiffs.

   We are willing to evaluate the possible removal of redactions on a document-by-document basis.  Plaintiffs have had possession of the documents from the crucial time period in this case for some time, nearly two years in many cases.  At this late date, plaintiffs should be able to identify a discrete and reasonable number of documents that they would like to discuss.  We will respond to inquiries regarding an appropriately narrow selection of documents.

B. <u>The "Dear Doctor" Issue</u>

2. Dear Doctor Letters.  At the 30(b)(6) deposition regarding the list of persons who received the "Dear Doctor" letters, Novartis would not let the witness answer questions regarding the content of the list of doctors allegedly receiving the Dear Doctor letters, and how the lists were generated on the basis of privilege and/or work product.  Plaintiffs do not understand how Novartis can take the position that this information is not discoverable.  Surely Novartis maintained a record of the addressee doctors for reasons independent of litigation.  Will Novartis produce a witness who will answer these questions?  In

3

the absence of complete answers to these questions, Plaintiffs will seek at trial to exclude any evidence from Novartis that the letters were sent to the asserted recipients.

**Johnston's Response:** NPC had never refused to provide plaintiffs information regarding the "content of the list of doctors" who received Dear Doctor letters in September 2004 and May 2005. In fact, in October 2007, NPC produced the lists of doctors and dentists to whom those letters were sent, to the extent that those lists are available to NPC. As we explained in our letter of November 21, 2007:

> The lists you received provide the information prepared by a third-party vendor and used by NPC in its September 2004 "Dear Doctor" letter and in its May 2005 "Dear Dentist" letter. The September 2004 "Dear Doctor" letter was mailed to all physicians identified in the two lists bearing the legends "ZAED-01747559_DR_LETTERLIST.xls" and "ZAED-01747560_ReviseDR_LETTERLIST.xls" as well as to oral surgeons identified in the American Dental Association list, ZAED-01747558_DEAR_DENTIST_LIST.txt. The latter list was also used in NPC's May 2005 "Dear Dentist" mailing.'"

> In addition, copies of various lists of addressees for these Dear Doctor letters can be found in the production. *See e.g.,* ZAEM-02814263; ZAEM-02809191 – ZAEM-02809192; ZAEM-02814264 – ZAEM-02820533; ZAEM-02819194 – ZAEM-02809455; ZAEM-02809456 – ZAEM-02809795.

> NPC also has not, as you suggested, refused to provide plaintiffs with Information regarding how the lists were "generated," to the extent that information is currently available to the company. At her 30 (b)(6) deposition, Dr. Lynne McGrath provided testimony regarding the persons to whom the Dear Doctor letters were sent. Plaintiffs obtained similar testimony at the 30 (b)(6) deposition of Dr. Peter Tarassoff, as well as at the fact deposition of Dr. John Hohneker (among others). The instruction not to answer on page 163 of the transcript of Dr. McGrath's 30 (b)(6) testimony was in response to the following questions:

Q:  Were you involved in any way of the production of the information contained in those files?

A:   No, I was not.

Q:   Do you know who was at Novartis?

   MR RUBIN:  Objection.  Among other things, it's a privileged communication.

Q:   Without regard to communications with lawyers, are you aware of anyone at Novartis, who's not a lawyer, who was involved in the production of that?

   MR RUBIN: Objection.  Objection.  It's a privileged communication.  Whether or not it's with a lawyer, it's also work product and attorney/client communication, and I'll instruct the witness not to answer the question on those grounds.

The basis of the objection at this deposition was that, to the extent Dr. McGrath knew the answer to this question, her knowledge was based solely on her communications with counsel in preparation for the deposition.  NPC did not refuse to provide the identity of persons who were involved in the process of identifying the persons to whom Dear Doctor letters were sent.  Unfortunately, rather than following up the deposition to more completely understand the nature of the instruction, you responded "Very well, Counsel" and moved on.

Plaintiffs have not sought to compel this testimony at any time between the date of Dr. McGrath's deposition on January 25, 2008, and the present.  Certainly in the absence of such a motion, plaintiffs cannot obtain the relief they threaten to pursue:  "exclusion of any evidence from Novartis that the letters were sent to asserted recipients."  Moreover, plaintiffs have in their possession the very information plaintiffs purport to seek: "a record of the addressee doctors" to whom the Dear Doctor letters were sent.  NPC will not provide a witness to simply read those lists, which have been previously produced, into the record.  NPC has provided numerous witnesses who have addressed these Dear Doctor letters, both as a factual matter and in the context of 30(b)(6) depositions. *See, e.g.,* Deposition of Deborah Dunsire, M.D. 3/6/08; Deposition of

5

Yong Hei, M.D. 4/13/08; Deposition of John Hohneker, M.D. 2/20/08; 30(b)(6) Deposition of Lynn Fahey McGrath 1/25/08.  Beyond the information elicited at these depositions, the subjects on which plaintiffs are demanding "complete answers" is not clear.  NPC is, therefore, unable to respond to further at this time.

C. The Electronic Data Base Issue

3.  Electronic Databases.  As you know, discussions continue between liaison counsel in New Jersey and your firm regarding production of the electronic databases including all content requested by Plaintiffs and in a format that makes the data usable.  Plaintiffs continue to seek this information.

**Johnston's Response:**  As we have told the plaintiffs repeatedly – most recently in a letter to your co-counsel in the New Jersey Mass Tort proceeding dated May 19, 2008 (enclosed), NPC has already produced databases in "usable" format that is suitable for importation into any commercially available database software.  If there remain particular issues with respect to databases, we would be happy to discuss those with you.

D. The Marketing and Advertising Issue.

5.  Marketing and Advertising Budgets for Aredia and Zometa.  Plaintiffs continue in their requests for these materials.

**Johnston's Response:**   The Court has ruled that financial information regarding Aredia and Zometa is not discoverable at this stage of the case.  NPC will continue to rely on the Court's resolution of this issue.

E. The Sales and Profit Issue

6.  Sales and Profit Information for Aredia and Zometa.  Plaintiffs continue in their requests for these materials.

**Johnston's Response:**  The Court has ruled that financial information regarding Aredia and Zometa is not discoverable at this stage of the case.  NPC will continue to rely on the Court's resolution of this issue.

F.  The X-Rays in Clinical Trial Issues

7.  X-Rays in Clinical Trials.  Document ZA-0792201 refers to Novartis
    having the x-rays of subjects' hips and jaws from clinical trials, and
    reviewing this data in connection with osteonecrosis of the jaw.  The
    same page refers to this information as "radiographs."  Plaintiffs
    continue to seek this information.

**Johnston's Response:**  As explained at various fact depositions, most
recently by Dr. Diane Young on June 5, 2008, the x-rays taken of clinical
trial participants (which is what is referred to in the referenced
documents) did not provide views or fields that would have been useful
in evaluating ONJ in clinical trial patients.  As a result, NPC never
obtained copies of those x-rays from its third-party vendor for the clinical
trials.  Those films are not currently in NPC's possession.  In the light of
the fact that those x-rays do not clearly show the jaw of the clinical trial
patients, it would be unduly burdensome to NPC and its vendors to
require the production of those films.  Even if plaintiffs were prepared to
bear the full cost of retrieving and copying  the x-rays of thousands of
clinical trial patients is unduly burdensome to NPC and its vendors given
that there were only 26 cases identified in the retrospective review of
clinical trials – involving thousands of participants – that contained one
of the 18 MedDra terms used by NPC and FDA to identify  potential
cases of ONJ (as you are aware NPC was able to determine that all but
six of those potential cases did not represent ONJ)  NPC will not,
therefore, make these x-rays available, to the extent they still exist, absent
an order from the Court to do so.

G.  The Email Custodian Issue

9.  E-mails.  Novartis unilaterally selected those custodians from whom
    e-mails would be produced.  Plaintiffs seek responsive e-mails from
    all custodians from whom responsive information has been identified.

**Johnston's Response:**  Again, we have set forth our position on the
selection of e-mail custodians in every written discovery response NPC
has served in this MDL proceeding (since August 2006) and have
reiterated the reason that process was reasonable, appropriate, and
sufficient to comply with NPC's discovery obligations in numerous
letters to plaintiffs' counsel, including a letter to your co-counsel in the

New Jersey Mass Tort cases dated May 19, 2008 (enclosed at 3-7).  As stated there more fully, NPC's approach is consistent both with the principles of the Sedona Working Group and Judge Scheindlin's decisions in *Zubulake v. UBS Warburg* 220 F.R.D. 212, 218 (S.D.N.Y. 2003) and *Zubulake v. UBS Warburg*, 229 F.R.D. 422, 433-34 (S.D.N.Y. 2004).  *See The Sedona Principles; Best Practices Recommendations & Principles for Addressing Electronic Document Production*, Comment 4.b. (at 44-45), Comment 6.a. (at 70-71), Comment 6.b. (at 72) (2005) ("It is the responsibility of the producing party to determine what is responsive to discovery demands and to make adequate arrangements to preserve and produce relevant information."); id. at Comment 6.a. ("Important steps in achieving the goal of reasonably limiting discovery may include collecting data from repositories used by key players rather than generally searching through the entire corporate computer system; defining the set of data to be collected by applying reasonable selection criteria, including search terms…"); id. at Comment 6.b. ("It is neither reasonable, feasible, nor required under Rule [4:18-1] to produce every file or message that might potentially be relevant to every issue in the litigation.  It should be reasonable, for example, to limit searches for messages to the e-mail accounts of key witnesses in the litigation, for the same reasons that it has been regarded as reasonable to limit searches for paper documents to the paper files of key individuals.")

NPC has always been willing to consider the production of e-mail from a limited number of additional custodians if plaintiffs could articulate a rationale for that production; none has been forthcoming. NPC will not, however, produce the voluminous e-mail records for all persons who were ever involved with Aredia and Zometa.  Such a production is unduly burdensome.

H. The Survey Issue

11. Surveys.  Plaintiffs understand that Novartis is in the process of producing additional information regarding surveys of dental / medical care providers regarding ONJ.  Please advise the date of the forthcoming production, or if an additional production.

**Johnston's Response:**  We are not aware of any discovery request made in the MDL that specifically seeks information on marketing surveys. Certainly information on any market research involving ONJ in the context of Aredia or Zometa has been produced in the 11.6 million pages

already made available to plaintiffs.  Although there has been a
discussion regarding this information in the New Jersey Mass Tort cases,
it is not clear that discussion is applicable in the MDL.  In any event,
supplemental responses were already provided in the New Jersey Mass
Tort cases identifying documents produced in the MDL related to such
market research.  We refer plaintiffs to those responses.

From these responses it is clear that the parties are still at odds on these

issues.  As Mr. Johnston makes clear the parties are working on items "C"

(Electronic Data Base Issue) and "G" (the E-mails of custodian issue) in the New

Jersey litigation.  Plaintiff's request that whatever material is produced there be

available for use in these matters.

The remaining issues must be addressed and Novartis compelled to produce

or otherwise sanctioned.

ARGUMENT

Not only is the scope of discovery easily broad enough to cover these

requests, but even were it a close question discovery is to be construed broadly.  As

a Court in this Circuit recently stated:

Determining the proper scope of discovery falls within the broad discretion of the trial court.
*Lewis v. ACB Business Services, Inc.,* 135 F.3d 389, 402 (6th Cir.1998). The Federal Rules of
Civil Procedure authorize broad discovery. *United States v. Leggett & Platt, Inc.,* 542 F.2d 655
(6th Cir.1976). Discovery may relate to any matter within the scope of Rule 26(b). Fed.R.Civ.P.
34(a). Rule 26(b) authorizes "discovery regarding any non-privileged matter that is relevant to
any party's claim or defense [.]" Fed.R.Civ.P. 26(b)(1). The information sought need not be
admissible at trial so long as it appears reasonably calculated to lead to the discovery of
admissible evidence. *Id.* These rules are to be construed liberally in favor of permitting
appropriate discovery. *Schlagenhauf v. Holder,* 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152
(1964); *Blue Bell Boots, Inc. v. Equal Employment Opportunity Comm'n,* 418 F.2d 355 (6th
Cir.1969).

*FFDI v. JAG Graphics Ltd., slip copy (May 13, 2008), 2008 WL 2078065* (S.D.Ohio) (attached hereto as Exhibit C).

Each item requested is within the limits of discovery and further ought to be produced.

A. <u>The Redaction Issue</u>.

This is a simple issue.  There is a protective order in this case.  Nonetheless, Novartis has unilaterally redacted materials from its relevant production that it believes are not relevant.  Mr. Johnston's letter makes no mention of whether Reclast, Aclasta or other bisphosphonate drugs have been redacted.  The Court will remember that the redactions were made at an early stage of this litigation. Novartis has unredacted copies of the documents easily available.  Plaintiff has no way of knowing whether the materials redacted are useful or relevant.  The material should be produced in the form it was created and attorney's redactions ought not to be part of it.  At a bare minimum any material redacted dealing with other bisphosphonate drugs should be produced.

B. <u>The Dear Doctor Letter Issue.</u>

Mr. Johnston's response gives the Court a flavor of what the PSC has had to deal with on this issue.  The Plaintiffs want to inquire into how the "Dear Doctor Letters" lists were created, how they were sent, who determined what doctors were

on them and their origin.  The PSC has sought this information in many forms but especially by a 30(b)(6) witness on this very issue.  As Defendants freely admit they instructed the 30(b)(6) witness not to answer the questions of counsel as to the source of Novartis' knowledge and making of the lists.  Regardless, of whether the 30(b)(6) witness was prepared by counsel the <u>information</u> available to Novartis must be made available to plaintiffs regardless of how the witness was prepared.  There is no requirement that the questions be repeated, or asked in a manner congenial to Defendant's counsel.  Defendant must be compelled to produce all information in its possession on how these lists were generated, and for failure to produce a proper witness a sanction of the cost of the new deposition should be imposed.

C.  <u>The Marketing and Advertising and Sales and Profit Issues.</u>

Defendant has stated it will not produce this information without an order so the Court must give it one.  This information, on the marketing and advertising and Sales and Profit issues, goes not only to punitive damages but more importantly to motive for the actions Novartis took.  Plaintiffs intend to show that Novartis put on a full court press to discredit anyone demonstrating the link between its drugs and ONJ.  Further, they intend to show by timeline exactly how Novartis reacted as its sales of Zometa were affected as information reached various practitioners.  This material is probative of the motive for all of Novartis' actions in this matter.

Financial material is routinely produced in litigation requiring it.  *See e.g., FFDI v JAG Graphics, Ltd., supra.*

    D.  <u>The X-Rays in The Clinical Trial Issue.</u>

    The X-Rays in the twenty-six cases mentioned by Mr. Johnston as identified in the retrospective ought to be produced.  It is not burdensome to produce those critical records so that the PSC can satisfy itself through expert review of what they show.  As for the rest, The Defendant must be precluded from using any of this information at trial or having its experts review or testify as to what is in any other X-rays.  The Defendants claim burdensomeness in producing this material.  They assert that the jaw can not be seen in any of the x-rays.  There is no prejudice to producing the records of the 26 patients and an order precluding any use by Defendants, by experts, or otherwise of any of the rest of the X-rays or testifying or opining as to what they do or do not show.

    E.  <u>The Survey Issue.</u>

    Mr. Johnston's response here is ambiguous.  The PSC does not know if all marketing surveys have been produced or not.  He directs attention to some marketing material but does not say the marketing surveys have all been produced.  Such ambiguity is not conducive to proper discovery.  Novartis should be compelled to state all such marketing surveys have been produced, or to produce them.

F.  <u>The E-Mail and Database Issues.</u>

As Mr. Johnston's reply demonstrates, these issues are being exhaustively reviewed in the New Jersey litigation.  While the rationale for identifying custodians with relevant information, but only producing the emails of some of those custodians, has never been clear to the PSC and we believe it improper, this issue ought to be left to the Court directly handling it so as not to duplicate work and waste judicial resources.  The PSC asks only that the material ordered produced there, if any, be available here in these cases.

G.    <u>Recently Received Discovery</u>

On June 17, 2008, Novartis served two documents on the PSC: *Novartis Pharmaceutical Corporation's Responses to Plaintiffs' Steering Committee's Fourth Set of Interrogatories*, and *Novartis Pharmaceutical Corporation's Responses to Plaintiffs' Steering Committee's Seventh Set of Document Requests*. The PSC has had insufficient time to analyze and determine any deficiencies in these requests or to consult with Novartis.  It is anticipated that like the vast majority of discovery disputes thus far any here may be settled after consultation.

On June 23, 2008, Novartis served (timely) a myriad of additional documents on the PSC.  First, Novartis produced a document entitled *Novartis Pharmaceutical Corporation's Responses to Plaintiffs' Steering Committee's Fifth Set of Interrogatories*.  The document had three (3) exhibits attached, Exhibits A

through C.  This time, instead of directing the PSC to hundreds of thousands of documents as its response, Novartis cited *millions* of documents.  For example, when asked for a simple list of names, Novartis provided Exhibit A to the *Response to Fifth Set of Interrogatories*, a one hundred and thirteen (113) page, double columned, list of Bates ranges of "responsive" documents.  Attachments B and C to the *Response to Fifth Set of Interrogatories*, also provided by Novartis as responsive to PSC interrogatories, were shorter at only eleven (11) and fifteen (15) double columned pages of Bates ranges respectively, yet still contained a massive amount of material.  Further, there are many objections and caveats in the responses.  One day is insufficient to review and consult on such material.

Along with its *Response to Fifth Set of Interrogatories*, Novartis also produced on June 23, 2008 a document entitled *Novartis Pharmaceutical Corporation's Responses to Plaintiffs' Steering Committee's Eighth Set of Document Requests*.  This document had six (6) exhibits attached, A through F. Again, Novartis cites millions of documents in Exhibits A through E as responsive. It also contains much boilerplate objections and caveats.

Novartis additionally produced on June 23, 2008 *Novartis Pharmaceuticals Corporation's Responses to Plaintiffs' Steering Committee's First Requests for Admission* and *Novartis Pharmaceuticals Corporation's Response and Objections to Plaintiffs' Steering Committee's Notice on Taking Video Deposition*.   These

contain a host of objections and caveats.  The PSC has not yet been able to address

Novartis' objections contained in either document, and will go forward to reach a

solution, bringing only those matters absolutely necessary to the attention of the

court.

Conclusion

Novartis should be compelled to produce the requested material.

Respectfully submitted,

THE PLAINTIFFS' STEERING COMMITTEE

By: /s   John J. Vecchione
Bart T. Valad, Esq.
John J. Vecchione, Esq.
VALAD & VECCHIONE, PLLC
3863 Plaza Drive
Fairfax, Virginia  22030
Telephone:  (703) 352-4800
Fax:  (703) 352-4820

Dated:      June 24, 2008

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Plaintiff

Steering Committee's Memorandum in Support of Its Motion to Compel

Discovery Responses was furnished by operation of the Court's Electronic Case

Filing System on counsel of record in case No. 3:06-MD-1760, on this 24th day of

June, 2008.

        /s John J. Vecchione
        John J. Vecchione, Esq.

# EXHIBIT

# A

# VALAD & VECCHIONE, PLLC

Bart T. Valad, Member
John J. Vecchione, Member

3863 Plaza Drive
Fairfax, VA 22030
Phone: (703) 352-4800
Fax: (703) 352-4820

June 11, 2008

**VIA FACSIMILE AND
ELECTRONIC MAIL**

Robert E. Johnston, Esquire
Spriggs & Hollingsworth
1350 I Street, NW, 9th Floor
Washington, DC 20005

Re:     *In re Aredia® and Zometa® Products Liability Litigation*, 3:06-MD-1760

Dear Robert:

I write in further satisfaction of the parties' meet and confer obligations in regard to a number of discovery issues that have not been resolved. Please provide me with your client's position on these items by Tuesday, June 17, 2008 so that the Plaintiffs can present any unresolved issues to the Court for resolution by the June 20, 2008 deadline.

1.      Redactions. Novartis's production of documents includes more than 100,000 redactions on the basis of relevancy. Prior orders of the Court did not require Novartis to produce unredacted versions of these documents, over Plaintiffs' objections. Will Novartis, without waiving any objection to admissibility, produce unredacted versions so that Plaintiffs can make their own evaluation of the content and relevance of these documents?

2.      Dear Doctor Letters. At the 30(b)(6) deposition regarding the list of persons who received the "Dear Doctor" letters, Novartis would not let the witness answer questions regarding the content of the list of doctors allegedly receiving the Dear Doctor letters, and how the lists were generated on the basis of privilege and/or work product. Plaintiffs do not understand how Novartis can take the position that this information is not discoverable. Surely Novartis maintained a record of the addressee doctors for reasons independent of litigation. Will Novartis produce a witness who will answer these questions? In the absence of complete answers to these questions, Plaintiffs will seek at trial to exclude any evidence from Novartis that the letters were sent to the asserted recipients.

Robert E. Johnston, Esquire
June 11, 2008
Page 2

3.    Electronic Databases.  As you know, discussions continue between liaison counsel in New Jersey and your firm regarding production of the electronic databases including all content requested by Plaintiffs and in a format that makes the data usable. Plaintiffs continue to seek this information.

4.    Audio and Video Recordings.  We have recently requested certain recordings from the ones identified to us in correspondence from Gary Rubin, with a reservation of rights to select additional ones.  It appears to me that we are in agreement with regard to production of these items.  Please let me know if you disagree.

5.    Marketing and Advertising Budgets for Aredia and Zometa.  Plaintiffs continue in their requests for these materials.

6.    Sales and Profit Information for Aredia and Zometa.  Plaintiffs continue in their requests for these materials.

7.    X-Rays in Clinical Trials.  Document ZA-0792201 refers to Novartis having the x-rays of subjects' hips and jaws from clinical trials, and reviewing this data in connection with osteonecrosis of the jaw.  The same page refers to this information as "radiographs."  Plaintiffs continue to seek this information.

8.    Previous Discovery Requests.  As referenced in my letter of May 21, (copy enclosed) Plaintiffs do not have a record of receiving a number of responses to previously served written discovery.  Please provide Novartis's responses.

9.    E-mails.  Novartis unilaterally selected those custodians from whom e-mails would be produced.  Plaintiffs seek responsive e-mails from all custodians from whom responsive information has been identified.

10.    Production of Foreign Witnesses.  As you know, Plaintiffs are working with counsel for Novartis's foreign affiliates to produce witnesses and documents located in foreign countries.

11.    Surveys.  Plaintiffs understand that Novartis is in the process of producing additional information regarding surveys of dental / medical care providers regarding ONJ.  Please advise the date of the forthcoming production, or if an additional production is not being prepared.

12.    Deadline for Motions Practice.  Plaintiffs served Interrogatories, Document Requests, and Requests for Admission on Novartis May 21, 2008.  Novartis's responses to these items are due June 20, 2008, which is the deadline for motions on written discovery, leaving no time for the parties to confer and Plaintiffs to present any

Robert E. Johnston, Esquire
June 11, 2008
Page 3

unresolved issues to the Court.  Plaintiffs seek Novartis's consent to extend the deadline for motions practice on these items served May 21, 2008 to 30 days after Novartis serves its responses.  If the parties are in agreement on this issue, Plaintiffs propose that the parties submit a consent order for entry by the Court extending the deadline.

I look forward to your response.

Sincerely,

Bart T. Valad, Esq.

Enclosure

cc:     Katharine R. Latimer, Esquire
        C. Patrick Flynn, Esquire
        Plaintiffs' Steering Committee

# VALAD & VECCHIONE, PLLC

Bart T. Valad, Member
John J. Vecchione, Member

3863 Plaza Drive
Fairfax, VA 22030
Phone: (703) 352-4800
Fax: (703) 352-4820

May 21, 2008

**VIA FIRST CLASS MAIL**
**AND ELECTRONIC MAIL**

Katherine R. Latimer, Esquire
Spriggs & Hollingsworth
1350 I Street, NW, 10th Floor
Washington, DC 20005

Re:     *In re Aredia and Zometa Products Liability Litigation*, 3:06-MD-1760

Dear Kate:

Plaintiffs do not have a record of receiving Novartis's responses to the following written discovery: (1) PSC's Third Set of Interrogatories; (2) PSC's Fourth Set of Interrogatories; (3) PSC's Fifth Set of Document Requests; and (4) PSC's Seventh Set of Document Requests. Please advise.

Additional copies of these items are enclosed for your convenience.

Sincerely,

Bart T. Valad, Esq.

JJV/mj
Enclosures

cc:     Robert E. Johnston, Esquire (via e-mail)
Gary I. Rubin, Esquire (via e-mail)
C. Patrick Flynn, Esquire (via e-mail)

# EXHIBIT
# B



Spriggs & Hollingsworth
1350 I Street, NW
Washington, DC 20005

tel. 202.898.5800
fax 202.682.1639
www.spriggs.com

Robert E. Johnston
202.898.5845
rjohnston@spriggs.com

June 17, 2008

**VIA ELECTRONIC MAIL, ORIGINAL TO FOLLOW BY U.S. MAIL**

Bart T. Valad, Esq.
Valad & Vecchione, PLLC
3863 Plaza Drive
Fairfax, VA  22030

Re:    *In re: Aredia® and Zometa® Products Liability Litigation*
         USDC M.D. Tenn. No.  3:06-CV-1058 (MDL No. 1760)

Dear Bart:

This letter responds to your "meet and confer" letter of June 11, 2008, in which you revive a number of discovery issues that have been discussed repeatedly between counsel (many of which we believed were resolved) but make no suggestions about how to move forward. Nevertheless, we will respond to each item raised in your letter in the order you addressed them.

1.      Among the 11.6 million pages NPC has produced in this litigation are documents containing redactions. These redactions fall within one of three categories: a) FDA-regulation-mandated redactions; b) redactions of personal information; and c) redactions of "other drug" information that was not responsive to plaintiffs' request. Redactions were not based, as you suggest, merely on a lack of "relevance." In fact, a significant amount of arguably irrelevant information was produced to plaintiffs. As you well know, plaintiffs are not entitled to the discovery of non-responsive information about other pharmaceutical products in NPC's portfolio and NPC has no obligation to make that information available to plaintiffs.

We are willing to evaluate the possible removal of redactions on a document-by-document basis. Plaintiffs have had possession of the documents from the crucial time periods in this case for some time, nearly two years in many cases. At this late date, plaintiffs should be able to identify a discrete and reasonable number of documents that they would like to discuss. We will respond to inquiries regarding an appropriately narrow selection of documents.

Spriggs2Hollingsworth

Bart T. Valad, Esq.
June 17, 2008
Page 2

    2.     NPC has never refused to provide plaintiffs information regarding the "content of the list of doctors" who received Dear Doctor letters in September 2004 and May 2005. In fact, in October 2007, NPC produced the lists of doctors and dentists to whom those letters were sent, to the extent that those lists are available to NPC. As we explained in our letter of November 21, 2007:

> The lists you received provide the information prepared by a third-party vendor and used by NPC in its September 2004 "Dear Doctor" letter and in its May 2005 "Dear Dentist" letter. The September 2004 "Dear Doctor" letter was mailed to all physicians identified in the two lists bearing the legends "ZAED-01747559_DR_LETTERLIST.xls" and "ZAED-01747560_ReviseDR_LETTERLIST.xls" as well as to oral surgeons identified in the American Dental Association list, ZAED-01747558_DEAR_DENTIST_LIST.txt. The latter list was also used in NPC's May 2005 "Dear Dentist" mailing.' "

In addition, copies of various lists of addressees for these Dear Doctor letters can be found in the production. *See, e.g.*, ZAEM-02814262 - ZAEM-02814263; ZAEM-02809191 - ZAEM-02809192; ZAEM-02814264 - ZAEM-02820533; ZAEM-02809194 - ZAEM-02809455; ZAEM-02809456 - ZAEM-02809795.

    NPC also has not, as you suggest, refused to provide plaintiffs with information regarding how the lists were "generated," to the extent that information is currently available to the company. At her 30(b)(6) deposition, Dr. Lynne McGrath provided testimony regarding the persons to whom the Dear Doctor letters were sent. Plaintiffs obtained similar testimony at the 30(b)(6) deposition of Dr. Peter Tarassoff, as well as at the fact deposition of Dr. John Hohneker (among others). The instruction not to answer on page 163 of the transcript of Dr. McGrath's 30(b)(6) testimony was in response to the following questions:

> Q: Were you involved in any way of the production of the information contained in those files?
>
> A:    No, I was not.
>
> Q:    Do you know who was at Novartis?
>
>     MR. RUBIN: Objection. Among other things, it's a privileged communication.
>
> Q:    Without regard to communications with lawyers, are you aware of anyone at Novartis, who's not a lawyer, who was involved in the production of that?

Spriggs **2** YEARS Hollingsworth

Bart T. Valad, Esq.
June 17, 2008
Page 3

> MR. RUBIN: Objection. Objection. It's a privileged communication. Whether or not it's with a lawyer, it's also work product and attorney/client communication, and I'll instruct the witness not to answer the question on those grounds.

The basis of the objection at this deposition was that, to the extent Dr. McGrath knew the answer to this question, her knowledge was based solely on her communications with counsel in preparation for the deposition. NPC did not refuse to provide the identity of persons who were involved in the process of identifying the persons to whom Dear Doctor letters were sent. Unfortunately, rather than following up at the deposition to more completely understand the nature of the instruction, you responded "Very well, Counsel" and moved on.

Plaintiffs have not sought to compel this testimony at any time between the date of Dr. McGrath's deposition on January 25, 2008, and the present. Certainly in the absence of such a motion, plaintiffs cannot obtain the relief they threaten to pursue: "exclusion of any evidence from Novartis that the letters were sent to asserted recipients." Moreover, plaintiffs have in their possession the very information plaintiffs purport to seek: "a record of the addressee doctors" to whom the Dear Doctor letters were sent. NPC will not provide a witness to simply read those lists, which have been previously produced, into the record. NPC has provided numerous witnesses who have addressed these Dear Doctor letters, both as a factual matter and in the context of 30(b)(6) depositions. *See, e.g.,* Deposition of Anne Altmeyer 3/14/08; Deposition of Geoffrey Cook 4/17/08; Deposition of Deborah Dunsire, M.D. 3/6/08; Deposition of Yong Hei, M.D. 4/13/08; Deposition of John Hohneker, M.D. 2/20/08; 30(b)(6) Deposition of Lynn Fahey McGrath 1/25/08. Beyond the information elicited at these depositions, the subjects on which plaintiffs are demanding "complete answers" is not clear. NPC is, therefore, unable to respond to further at this time.

3.      As we have told the plaintiffs repeatedly – most recently in a letter to your co-counsel in the New Jersey Mass Tort proceeding dated May 19, 2008 (enclosed), NPC has already produced databases in "usable" format that is suitable for importation into any commercially available database software. If there remain particular issues with respect to databases, we would be happy to discuss those with you.

4.      We are copying the materials designated in John Vecchione's letter of May 30, 2008, and will provide them to plaintiffs as expeditiously as possible.

5.      The Court has ruled that financial information regarding Aredia® and Zometa® is not discoverable at this stage of the case. NPC will continue to rely on the Court's resolution of this issue.


Spriggs Hollingsworth

Bart T. Valad, Esq.
June 17, 2008
Page 4

6.      The Court has ruled that financial information regarding Aredia® and Zometa® is not discoverable at this stage of the case. NPC will continue to rely on the Court's resolution of this issue.

7.      As explained at various fact depositions, most recently by Dr. Diane Young on June 5, 2008, the x-rays taken of clinical trial participants (which is what is referred to in the referenced documents) did not provide views or fields that would have been useful in evaluating ONJ in clinical trial patients. As a result, NPC never obtained copies of those x-rays from its third-party vendor for the clinical trials. Those films are not currently in NPC's possession. In the light of the fact that those x-rays do not clearly show the jaw of the clinical trial patients, it would be unduly burdensome to NPC and its vendors to require the production of those films. Even if plaintiffs were prepared to bear the full cost of retrieving and copying these films (which would likely be substantial), the process of retrieving and copying the x-rays of thousands of clinical trial patients is unduly burdensome to NPC and its vendors given that there were only 26 cases identified in the retrospective review of clinical trials – involving thousands of participants – that contained one of the 18 MedDra terms used by NPC and FDA to identify potential cases of ONJ (as you are aware NPC was able to determine that all but six of those potential cases did not represent ONJ). NPC will not, therefore, make these x-rays available, to the extent they still exist, absent an order from the Court to do so.

8.      Enclosed please find a copy of NPC's responses to Plaintiffs' Steering Committee's Third Set of Interrogatories and Sixth Set of Document Requests, which were served on the Plaintiffs' Coordinating Counsel, C. Patrick Flynn, on 2/20/08 and 3/17/08, respectively. Also enclosed are NPC's responses to Plaintiffs' Steering Committee's Fourth Set of Interrogatories and Seventh Set of Document Requests, which were served less than 30 days before the original close of discovery date. It is our position that NPC had no obligation to respond to these requests, but NPC has voluntarily provided responses to avoid disputes in this regard.

9.      Again, we have set forth our position on the selection of e-mail custodians in every written discovery response NPC has served in this MDL proceeding (since August 2006) and have reiterated the reasons that process was reasonable, appropriate, and sufficient to comply with NPC's discovery obligations in numerous letters to plaintiffs' counsel, including a letter to your co-counsel in the New Jersey Mass Tort cases dated May 19, 2008 (enclosed at 3-7). As stated there more fully, NPC's approach is consistent both with the principles of the Sedona Working Group and Judge Scheindlin's decisions in *Zubulake v. UBS Warburg* 220 F.R.D. 212, 218 (S.D.N.Y. 2003) and *Zubulake v. UBS Warburg*, 229 F.R.D. 422, 433-34 (S.D.N.Y. 2004). *See The Sedona Principles; Best Practices Recommendations & Principles for Addressing Electronic Document Production*, Comment 4.b. (at 44-45), Comment 6.a. (at 70-71), Comment 6.b. (at 72) (2005) ("It is the responsibility of the producing party to determine what is responsive to discovery demands and to make adequate arrangements to preserve and produce relevant information."); id. at Comment 6.a. ("Important steps in achieving the goal of

Spriggs $2$ Hollingsworth
YEARS

Bart T. Valad, Esq.
June 17, 2008
Page 5

reasonably limiting discovery may include collecting data from repositories used by key players rather than generally searching through the entire corporate computer system; defining the set of data to be collected by applying reasonable selection criteria, including search terms . . . ."); id. at Comment 6.b. ("It is neither reasonable, feasible, nor required under Rule [4:18-1] to produce every file or message that might potentially be relevant to every issue in the litigation. It should be reasonable, for example, to limit searches for messages to the e-mail accounts of key witnesses in the litigation, for the same reasons that it has been regarded as reasonable to limit searches for paper documents to the paper files of key individuals.").

NPC has always been willing to consider the production of email from a limited number of additional custodians if plaintiffs could articulate a rationale for that production; none has been forthcoming. NPC will not, however, produce the voluminous e-mail records for all persons who were ever involved with Aredia® and Zometa®. Such a production is unduly burdensome.

10.    NPC cannot make available for deposition any persons who are not current or former employees of Novartis Pharmaceuticals Corporation, the defendant in these cases. Please continue to discuss the availability of such witnesses with Mr. Grant Esposito of Morrison and Foerster.

11.    We are not aware of any discovery request made in the MDL that specifically seeks information on marketing surveys. Certainly information on any market research involving ONJ in the context of Aredia® or Zometa® has been produced in the 11.6 million pages already made available to plaintiffs. Although there has been a discussion regarding this information in the New Jersey Mass Tort cases, it is not clear that discussion is applicable in the MDL. In any event, supplemental responses were already provided in the New Jersey Mass Tort cases identifying documents produced in the MDL related to such market research. We refer plaintiffs to those responses.

12.    As plaintiffs are aware, discovery was originally scheduled to close on March 14, 2008. On May 9, 2008, Magistrate Judge Brown provided plaintiffs with a short extension of time to propound additional written fact discovery to NPC. That same order required that motions to compel written discovery responses were due to be filed by June 20, 2008. Plaintiffs delayed serving additional discovery until May 21, 2008. As a result, NPC's responses to that discovery are not due until June 23, 2008 (30 days plus 3 days for service by mail or electronic means under Federal Rule of Civil Procedure 6(d)). NPC will not to agree to extend the deadline established by the Court for motions to compel written discovery.

Spriggs 2 Hollingsworth
YEARS

Bart T. Valad, Esq.
June 17, 2008
Page 6

\*      \*      \*

I trust that the information above fully responds to the issues set forth in your letter.

Sincerely,

Robert E. Johnston

Enclosures